# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

STEPHANIE KLEEHAMMER,

                              Plaintiff,

-vs-                                      DECISION & ORDER

Monroe County and Patrick O'Flynn, *Monroe County Sheriff, In His Official and Individual Capacities*,          09-CV-6177-CJS

                              Defendants.

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Christina A. Agola, Esq. |
| | Seeta Persaud, Esq.[1] |
| | 2100 First Federal Plaza |
| | 28 East Main Street |
| | Rochester, NY 14614 |
| | (585) 262-3320 |
| For Defendants: | William K. Taylor |
| | Monroe County Attorney |
| | Howard A. Stark, Esq., of Counsel |
| | Monroe County Department of Law |
| | 39 West Main Street Room 307 |
| | Rochester, NY 14614 |
| | (585) 753-1433 |

## INTRODUCTION

**Siragusa, J.** This employment sex discrimination case is before the Court on Defendants' motion (Docket No. 9) for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, the application is granted in part.

---

[1]Although not noted in the Clerk's docket sheet, Ms. Persaud argued for Plaintiff.

## FACTUAL BACKGROUND

Since the motion is brought under Federal Rule of Civil Procedure 12, the Court must presume that the allegations in the complaint are true and resolve all doubts and inferences in favor of the nonmoving party. *See Wright v. Ernst & Young LLP*, 152 F.3d 169,173 (2d Cir.1998). Defendants have relied upon documents outside the complaint in support of their positions. As the Court of Appeals stated, "[f]or purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference…and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit…." *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted). The Court will apply this direction from the Circuit to determine whether papers outside the complaint, relied upon by Defendants, should be considered.

The portions of the complaint relevant to the pending motion are as follows:

10. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On January 26th, 2009, the U.S. Department of Justice issued a Notice of Right to Sue with regard to Plaintiff's claims. Less than 90 days have elapsed since the Plaintiff's receipt of her Notice of Right to Sue, and her subsequent filing of the original complaint in this matter.

11. Plaintiff is an individual woman who was at all times relevant herein an employee of defendant MONROE COUNTY, and a resident of the County of Monroe, State of New York.…

14. Plaintiff has been employed by the defendant since February 1998 as a "Deputy Sheriff Jailor."

15. Plaintiff maintained a stellar work record during her entire tenure.

16. In or about December 27, 2007, Plaintiff was subject to graphic live sex in the workplace when a female visitor masturbated in front of a male inmate in violation of well established jail policies.

17. Plaintiff was compelled to watch as there was no supervisor present and was told by male co-workers to "just sit there."

18. While Plaintiff "sat there," she was subject to lewd comments by her co-workers who stated, *inter alia*, "wow, she must have her whole fist up there" and "wonder if she has any female hygiene problems."

19. That Plaintiff's co-workers failed to follow the chain of command in response to Plaintiff's requests to contact a supervisor.

20. The entire incident was preserved by video tape, and by filing her charge of discrimination with the EEOC, Plaintiff duly requested that the video tape be preserved.

21. Plaintiff engaged in protected activity on January 14, 2008 when she complained to management about the events of December 27, 2007, and her co-worker's comments, which she believed in good faith constituted a hostile work environment.

22. Management failed to take any remedial action with regard to Plaintiff's good faith complaints.

23. The Plaintiff went on a compensable Worker's Compensation injury (major depression, anxiety disorder and NOS) which the Board[2] determined was the result of Plaintiffs exposure to a hostile environment.

24. Thereafter, Plaintiff was subject to a continuous pattern of retaliation, including denial of work related leave ("Z time"), and has been compelled to return to work under the threat of discipline, despite her condition.

(Compl. ¶¶ 10–11, 14–24.) Plaintiff's complaint contains six causes of action. In the first two causes of action, Plaintiff alleges that Defendants violated her rights under Title VII Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 290 ("NYSHRL"), based upon her allegation that "described unwelcome sexual harassment by defendant's agent created an intimidating, oppressive work environment which interfered with the Plaintiffs well being." (Compl. ¶ 28.) In the third and fourth causes of action, Plaintiff alleges claims of retaliation under Title VII and under NYSHRL. In her

---

[2] The "Board" is not identified in the complaint, but is probably a reference to the New York State Workers' Compensation Board. *See* Workers' Compensation Board at http://www.wcb.state.ny.us/ (last accessed July 14, 2010).

fifth cause of action, Plaintiff alleges a violation of the Equal Protection Clause of the Constitution, pursuant to 42 U.S.C. § 1983. Finally, in her sixth cause of action, Plaintiff alleges violations of her Fourth and Fourteenth Amendment rights, also pursuant to § 1983.

Attached to their motion to dismiss, Defendants have included two documents: Kleehammer Special Report (Ex. A) and Sommers Letter to Kleehammer. Defendants arguing that, "[t]hese exhibits are submitted in support of this motion as they are documents that the Kleehammer either possessed or knew about and upon which she relied in bringing the suit, or are integral to her Complaint." (Stark Decl. ¶¶ 6–7.) The Kleehammer report is a document evidently authored by Plaintiff for Lieutenant Spampinato of the Monroe County Sheriff's Office and dated January 14, 2010, with a subject of "Visits Incident." (Stark Delc. Ex. A, at 1.) It contains further details about the masturbation incident described in the complaint. The Sommers Letter to Kleehammer was one signed by Jennifer M. Sommers, Sheriff's Counsel, dated August 26, 2008, and addressed to Plaintiff at 132 Dorsetwood Drive in Rochester, with a reference line of "Work Status." It provides a summary of Plaintiff's work status as of January 15, 2008, and ends, "There will be no ruling on your eligibility for GML 207-c[3] benefits until you complete and forward the MB#4 as mandated, directed, and ordered. If you have any questions or wish to discuss this matter further, please contact me." (Stark Decl. Ex. B, at 2.)

Plaintiff has also submitted materials in addition to the complaint. In her response to the motion, she included a copy of the charge she made to the Equal Employment

---

[3]New York General Municipal Law § 207-c, Payment of salary, wages, medical and hospital expenses of policemen with injuries or illness incurred in the performance of duties.

Opportunity Commission ("EEOC"), as well as the EEOC's Right to Sue letter. (Agola Decl. ¶ 3 & Ex. A.) The EEOC charge contains details of the same masturbation incident described in the complaint. In her responsive papers to Defendants' motion, Plaintiff does not object[4] to the Court's consideration of the Kleehammer Special Report and the Sommers Letter to Kleehammer. Likewise, in their reply, Defendants did not object to the Court's consideration of the documents submitted by Plaintiff in her response. Accordingly, the Court, in addition to the subject complaint, will consider the Kleehammer Special Report, the Sommers Letter to Kleehammer, the EEOC complaint and Right to Sue letter in adjudicating the motion.

## STANDARDS OF LAW

### Fed. R. Civ. P. 12(c)

In deciding a Rule 12(c) motion, the Court applies the same standard used for a Rule 12(b)(6) motion. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Although Surprisingly, Plaintiff urges[5] the Court to review this motion pursuant to the old standard from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (the Court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), this despite the fact that the Supreme Court announced is *three years ago*, that, "after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete,

---

[4]At oral argument, Plaintiff's counsel also presented no objection to the Court's consideration of the documents submitted by Defendants.

[5]"A Motion pursuant to Fed R. Civ. P. Rule 12(b)(6) should only be granted if on the face of the complaint, it appears beyond doubt that Plaintiffs can prove no set of facts in support of his claim which would entitle them to relief." (Pl.'s Mem. of Law, at 3.)

negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

Since Plaintiff has apparently relied on a now inapplicable standard of law in opposing Defendant's application, the Court will set out appropriate standard for reviewing the sufficiency of a complaint pursuant to Rule 12. In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court stated:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the

other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 129 S. Ct. at 1949–50.

### *Title VII*

"Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion]…because of…sex.'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (quoting 42 U.S.C. § 2000e-2(a) (1991)) (emphasis in original). "'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Oncale*, 523 U.S. at 80 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring).)

***Hostile Environment***

To establish a claim of hostile work environment discrimination, a plaintiff must show that

> the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. Proving such a claim involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.
>
> In addition, the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer. Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.

*Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006).

The principles for determining whether conduct was sufficiently severe and pervasive to support a hostile environment claim are clear:

> Although isolated incidents ordinarily will not rise to the level of a hostile work environment, even a single incident of sufficient severity may so alter the terms and conditions of employment as to create such an environment. The matter of whether the conduct alleged was so severe or pervasive as to create an objectively hostile or abusive work environment, is to be decided based on the totality of the circumstances, in light of such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Where reasonable jurors could disagree as to whether alleged incidents of…harassment would have adversely altered the working conditions of a

reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law.

*Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir. 2004) (citations and internal quotations omitted).

### *New York Human Rights Law*

New York Executive Law § 296 provides in pertinent part as follows:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y. Exec. Law § 296(1) (2007). The Court notes that the elements of Title VII and New York Executive Law § 296 claims "can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII." *Gallagher v. Delaney*, 139 F.3d 338, 345 (2d Cir. 1998).

### *Equal Protection*

In a 1994 decision, the Second Circuit held that the Equal Protection Clause of the Constitution could provide a basis for a claim of sexual harassment in a public employment setting, writing that:

> The Supreme Court declared fifteen years ago that individuals have a constitutional right under the equal protection clause to be free from sex discrimination in public employment. *Davis v. Passman*, 442 U.S. 228, 234–35 (1979). Defendants argue that Annis's complaint really pleads sexual harassment, and that such a claim (i) is distinct from sex discrimination and (ii) is purely a creation of Title VII. Circuit courts that have considered this question have rejected the argument. *Beardsley v. Webb*, 30 F.3d 524, 1994 WL 386866 at * 4 (4th Cir. 1994); *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1185 (7th Cir. 1986) ("Sexual harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment."). While we do not subscribe

> to a categorical view that sexual harassment equals sex discrimination, we do agree that harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort. *See Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994) ("In some circumstances a § 1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual harassment in the workplace."). When—as alleged here—sexual harassment includes conduct evidently calculated to drive someone out of the workplace, the harassment is tantamount to sex discrimination.

*Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994).

## ANALYSIS

### *Pleading Standard*

Plaintiff contends that the pleading standard for an employment discrimination case was set by the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). The Southern District of New York, though, in *Barbosa v. Continuum Health Partners, Inc.*, 09 Civ. 6572 (SAS), 2010 U.S. Dist. LEXIS 21052 (S.D.N.Y. Mar. 5, 2010), observed that:

> The *Twombly* court held that *Swierkiewicz* remains good law.n40 However, some courts and commentators have concluded that *Twombly* and *Iqbal* repudiated *Swierkiewicz*, at least to the extent that *Swierkiewicz* relied upon pre-*Twombly* pleading standards.n41 Reconciling *Swierkiewicz*, *Twombly*, and *Iqbal*, a complaint need not establish a *prima facie* case of employment discrimination to survive a motion to dismiss; however, "the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim."n42

*Barbosa*, 2010 U.S. Dist. LEXIS 21052, at *8 (footnotes omitted). The Court is persuaded by the reasoning in *Barbosa* and will review Plaintiff's claims to determine whether they are facially plausible and give fair notice to Defendants as to their bases.

### *Hostile Environment*

Plaintiff argues, "it is clear that the Complaint alleges a gender-based hostile work environment claim." (Pl.'s Mem. of Law, at 4.) The single incident on which Plaintiff bases her claim consisted of acts by a non-employee (the female visitor) and the following

comments by co-equal employees: "Plaintiff was compelled to watch as there was no supervisor present and was told by male co-workers to 'just sit there';…she was subject to lewd comments by her co-workers who stated, *inter alia*, 'wow, she must have her whole fist up there' and 'wonder if she has any female hygiene problems.'" (Compl. ¶¶ 17–18.) Plaintiff interprets the situation to have required her to watch, though nothing in the Kleehammer report suggests that. In fact, Plaintiff reported that at one point, she heard someone say, "'Why don't you go take a walk to the ODR." The report shows that she was free to move around, and did so:

> I went to the back observation window where Stirpe, Schauber and McCarthy were standing (closest to booth #21) in an attempt to see if she may have been attempting to pass contraband to Brown.… I, at that point, walked back around the corner and back to the table in observation (still behind the glass) closest to the timer desk.… As I went to and opened the entry door to the timer desk I said, "It's offensive and filthy and I'm going to say something to her and perhaps end the visit if she couldn't comply with the rules of keeping her hands on the table. I had the entry door partially open when I heard from staff, "No, no, just wait, she'll stop." I do not know who made this comment because they were around the corner from where I was standing.… I did not address this issue with Brown's visitor, instead sat at the table behind the glass, next to the entry door to the timer desk. I tried to eat and monitor the female that had a visit scheduled on the other side. Brown's visitor continued her actions throughout the visit and then I heard come from around the corner, "She's really going to town" "She better be careful she's going to bruise that thing" She's got damn near her whole fist in there" "Maybe she has a feminine hygiene problem?" A comment was directed at me "Why don't you go take a walk to the ODR." But to me, I'm in my assigned area, why should I have to leave? I heard Deputy Stirpe call via radio for Deputy Heh (working in property) and tell him there was property in visits waiting for him. Deputy Heh came into observation briefly then left. I continued to sit at the table, I said to them that it was filthy and they were filthy and called them savages.… I again said that they needed to say something to her because there are kids and other civilians in the room and it wasn't fair for them to have to by chance witness that. The visit time was almost expired, at which point they told me "do whatever you want" as far as ending the visit. I went out to the timer because the round was expiring and glared at her for the remainder 5 minutes of the visit.

(Kleehammer Report, at 2–4.)

As indicated above, rarely will a single incident amount to a basis for a hostile work environment. Here, the offensive utterances are not alleged to have been frequent, severe, or physically threatening or humiliating. The Court finds that the allegations do not present a situation where "reasonable jurors could disagree as to whether alleged incidents of…harassment would have adversely altered the working conditions of a reasonable employee." *Patterson*, 375 F.3d at 227. Nothing shows that the comments made by the co-employees were made because of Plaintiff's sex. Moreover, since none of the employees, whom Plaintiff alleges caused the hostile environment, was a supervisor, Plaintiff was required to show that "a specific basis exists for imputing the objectionable conduct to the employer." *Fairbrother*, 412 F.3d at 48-49.

In that regard, where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Id.* Plaintiff alleges, in conclusory fashion, that, "[m]anagement failed to take any remedial action with regard to Plaintiff's good faith complaints." (Compl. ¶ 22.) However, as the Second Circuit stated in *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010):

> the failure to investigate did not by itself alter the terms and conditions of Fincher's employment; rather, it preserved the very circumstances that were the subject of the complaint. Therefore the failure to investigate Fincher's complaint could not itself have contributed to or constituted a hostile work environment. *Cf. Robles v. Argonaut Rest. & Diner, Inc.*, No. 05 Civ. 5553, 2009 WL 3320858 at *8, 2009 U.S. Dist. LEXIS 96949, at *27-28 (S.D.N.Y. Oct. 9, 2009) ("A hostile work environment claim can succeed only if plaintiff

> demonstrates that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his employment were thereby altered") (citing *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001)).

*Fincher*, 604 F.3d at 724. No allegations are made that "management's" failure resulted in an adverse employment action. Further, although Plaintiff alleges that a "Board" determined she suffered from a hostile work environment, Plaintiff does not specify the "Board," nor argue that the "Board's" determination is binding on this Court. If the "Board" is the New York Workers' Compensation Board, Plaintiff has not argued that any findings made should be given *res judicata* effect. *Cf. Heroux v. Ingrassio*, 612 F. Supp. 2d 236, 240 (W.D.N.Y. 2009) ("Any Workers' Compensation Board determination must be given *res judicata* effect [on the Workers' Compensation claim] by this court where, as here, the findings by the Board are made in adjudicatory proceedings and 'where the board makes discrete findings of fact.'" *Tran v. Antoine Aviation Co., Inc.*, 624 F.Supp. 179, 180 (S.D.N.Y.1985)."). The Court determines that Plaintiff has not plead a plausible hostile environment claim. Consequently, the First and Second causes of action must be dismissed.

### *42 U.S.C. § 1983*

Although Plaintiff's fifth and sixth causes of action are confusingly plead, she claims that pursuant to 42 U.S.C. § 1983, the County and Sheriff O'Flynn are liable to her for a violation of her rights under the Fourteenth Amendment's Equal Protection clause and the

Fourth[6] Amendment. (Pl.'s Mem. of Law, at 9.) In *Bellamy v. Mount Vernon Hosp.*, 07 Civ. 1801 (SAS), 2009 WL 1835939 (S.D.N.Y. Jun. 26, 2009), the district court observed that:

> The Supreme Court's decision in *Iqbal v. Ashcroft* abrogates several of the categories of supervisory liability enumerated in *Colon v. Coughlin*. *Iqbal*'s "active conduct" standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation. Only the first and part of the third *Colon* categories pass *Iqbal*'s muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other Colon categories impose the exact types of supervisory liability that *Iqbal* eliminated-situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate.

*Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939, *6. Thus, in order to plausibly plead a claim against the County and Sheriff O'Flynn, Plaintiff must allege either that O'Flynn, the Monroe County Sheriff, had a hand in the alleged constitutional violation, or created a policy or custom under which the unconstitutional practices occurred. Case law guidance in this area is plentiful. As the district court in *Sash v. United States*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009), pointed out:

> To survive a motion for summary judgment, Sash cannot just echo the legal standard for supervisory liability, but rather must submit evidence, and he has failed to do so. *See, e.g., Cicio v. Graham*, No. 08-CV-534, 2009 WL 537534 at *7 (N.D.N.Y. Mar. 3, 2009) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *Hallock v. Bonner*, 567 F.Supp.2d 334, 339 (N.D.N.Y.2008) (granting summary judgment for federal customs officials where the record was "devoid of any evidentiary support" that they created a relevant custom or policy, or acted negligently in their supervisory roles), aff'd 343 Fed.Appx. 633 (2d Cir.2009). FN19

---

[6]The Fourth Amendment reads, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." It is not clear from Plaintiff's papers exactly how she pleads a claim under this Amendment.

> FN19. *See also, e.g., Santiago v. City of N.Y.*, 98 Civ. 6543, 2000 WL 1532950 at *7 (S.D.N.Y. Oct. 17, 2000) (granting summary judgment where there was no evidence that supervisor created a custom or policy under which the alleged constitutional violation occurred); *Reid v. Artus*, 984 F.Supp. 191, 195 (S.D.N.Y.1997) (dismissing a prisoner's section 1983 claim against a supervisory official when the pleadings failed to establish "any factual basis upon which a fact finder could reasonably conclude personal involvement by the supervisory official defendant .... that [defendant] created or continued a policy or custom which allowed the violation to occur, or that [defendant] was grossly negligent in managing the subordinates who caused the unlawful condition."); *Pravda v. City of Albany*, 956 F. Supp. 174, 182 (N.D.N.Y.1997) (granting summary judgment for supervisory officers in excessive force case because "Plaintiff [did] not allege any facts from which the Court could reasonably infer that Defendants ... participated in [the] alleged mistreatment, were present when it allegedly occurred, knew about it, or were grossly negligent in any way."); *Show v. Patterson*, 955 F. Supp. 182, 188 (S.D.N.Y. 1997) (dismissing case against supervisory defendants where plaintiffs failed to submit evidence indicating that supervisory defendants created or were aware of a policy of violating prisoners' rights by using excessive force, and because the complaint was devoid of any allegations that the defendants were negligent in supervising subordinates).

*Sash*, 674 F. Supp. 2d at 546 n.19.

Plaintiff argues that, "O'Flynn, knew or should have known that the aforesaid failure to properly train or supervise his subordinates, the failure to adopt proper policies, procedures or standards, the failure to properly investigate Plaintiff's complaints, and his reckless disregard or gross negligence would result in the deprivation of the rights secured to the Plaintiff…." (Pl.'s Mem. of Law, at 10.) Clearly, Plaintiff is not alleging that the Sheriff had a hand in the alleged violation. The complaint states:

> That as a result of defendants County of Monroe and O'Flynn's failure to take remedial action with regard to Plaintiffs complaints, and/or defendant County of Monroe's failure to properly investigate prior similar incidents, and/or the reckless disregard or gross indifference by defendant County of Monroe for the gross negligence of those Deputies who stood in a managerial role to Plaintiff, in particular defendant O'Flynn, the County of Monroe had a policy, practice or custom which encouraged or permitted its deputies to engage in such gross misconduct that subjected its female employees to a hostile environment. That defendants County of Monroe and

> O'Flynn intentionally, knowingly, maliciously and/or recklessly permitted and/or allowed the continuation of such a policy, practice or custom.

(Compl. ¶ 61.) First, since the complaint does not plausibly plead a hostile environment or retaliation, the Court is unaware of what Plaintiff alleges required "remedial action." Second, Plaintiff's vague reference to "prior similar incidents," "reckless disregard or gross indifference," or the "gross negligence of those [unnamed] Deputies who stood in a managerial role to Plaintiff," does not meet the requirements of *Twombly*. Plaintiff was obligated to, "provide the grounds of [her] entitlement to relief" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action…." *Twombly*, 550 U.S. at 555; *see also*, *ATSI Communications, Inc.*, 493 F.3d at 98 ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"). Plaintiff's allegations do not raise anything more than vague conclusions and speculation. Consequently, her claims under the Equal Protection Clause cannot stand, and the Fifth and Sixth causes of action must be dismissed.

***Retaliation***

As the Second Circuit discussed in *White v. Eastman Kodak Co.*, 368 Fed. Appx. 200, 201-202, 2010 WL 726629, 1 (2d Cir. 2010):

> To establish a *prima facie* case of retaliation, a plaintiff must present evidence sufficient to permit a rational trier of fact to find that (1) he engaged in an activity protected by Title VII, (2) the employer was aware of this activity, (3) the employer took adverse action[7] against the employee, and (4) there is a casual connection between the protected activity and the adverse action. [*Kessler v. Westchester County Dep't of Soc. Servs.*, 461

---

[7] "[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).

> F.3d 199, 205 (2d Cir. 2006)] at 205-06. If the plaintiff establishes his prima facie case, the burden shifts to the employer, who must then articulate a legitimate, non-retaliatory reason for the adverse action. *See, e.g., Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498-99 (2d Cir. 2009). If the employer carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered" by the employer was a mere pretext for discrimination. *Id*. at 499 (quotation marks omitted).

*White*, 368 Fed. Appx. at 201–02. Here, Plaintiff has alleged she was engaged in a protected activity: reporting an incident of hostile work environment to her employer. Thus, as Defendants concede (Def.'s Mem. of Law, at 14), she had sufficiently plead facts to meet the first two requirements of a claim for retaliation. However, the parties disagree on whether the complaint meets the third and fourth requirements.

With regard to an adverse action, Plaintiff alleges that after January 14, 2008, when she left work as the result of what she alleges was a compensable injury, she states: "Plaintiff was subject to a continuous pattern of retaliation, including denial of work related leave ("Z time"), and has been compelled to return to work under the threat of discipline, despite her condition. (Dkt. No, ¶¶ 24[8])." (Pl.'s Mem. of Law, at 6.) As the Sommers Letter to Kleehammer states, however, Plaintiff was not denied leave; she was merely required to properly apply for it: "There will be no ruling on your eligibility for GML 207-c benefits until you complete and forward the MB#4 as mandated, directed, and ordered. If you have any questions or wish to discuss this matter further, please contact me." (Sommers Letter, at 3.)

---

[8]Though this citation refers to paragraphs [sic] 24 of *some* unidentified document, the Court assumes Plaintiff's counsel meant to cite to the complaint's paragraph 24, which states, "Thereafter, Plaintiff was subject to a continuous pattern of retaliation, including denial of work related leave ("Z time"), and has been compelled to return to work under the threat of discipline, despite her condition." (Compl. ¶ 24.)

The law is clear that, "the key inquiry is whether the effect of defendants' decision was 'materially adverse,' *i.e.*, ''harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.''" (*Ragusa v. Malverne Union Free Sch. Dist.,* 2010 U.S. App. LEXIS 12640 (2d Cir. 2010) (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 69 (2006)) (analyzing retaliation claim under Title VII, 42 U.S.C. § 2000e et seq.)) (other citations omitted). Nothing in the letter suggests that Plaintiff's employer was going to terminate her, significantly decrease her pay, *see Holowecki v. FedEx*, 2010 U.S. Appl LEXIS 12954 (2d Cir. ) ("A significant decrease in pay may constitute an adverse employment action."), adversely change her assignment, *see Ragusa*, or take any action other than *not* rule on her eligibility for benefits, until she completed a required form.

At oral argument, however, Plaintiff's counsel represented that the basis for her client's claim was *not* the letter from Sommers, but something else. Defense counsel was unaware of *anything* other than the Sommers letter that could be construed as retaliatory and the Court determined that the Sommers letter is too remote in time and insufficiently adverse to for a plausible basis for a retaliation complaint under either Federal or State law. In the complaint, Plaintiff alleges that, "defendant [sic] has denied Plaintiff Z time and has otherwise compelled her to return to work under the threat of discipline despite the fact that she remains on leave due to a compensable worker's [sic] compensation claim." (Compl. ¶ 45.) The Court inquired of Plaintiff's counsel about any further factual information, since she denied that the Sommers letter formed any basis for this retaliation claim, but counsel knew nothing but what was alleged in the complaint. Though bare of amplifying factual allegations, Plaintiff's complaint, does allege that she engaged in a protected activity, and

does allege that as a result of engaging in a protected activity she suffered an adverse action through the denial of Z time and through being required to return to work notwithstanding her alleged disability. Therefore, the complaint meets the standard set by *Twombly* and *Iqubal* with regard to the Third and Fourth causes of action. Accordingly, Defendants' motion to dismiss must be denied with regard to the Third and Fourth causes of action.

## *Fed. R. Civ. P. 11*

The Court cautioned counsel on the record that she needed a good faith basis for pleading the retaliation claim, especially since she denied that the Sommers letter was the basis for that claim. The Court repeats that Federal Rule of Civil Procedure 11 requires all counsel, as officers of the court, to make only those claims that are supported by a good faith factual basis. In that regard, the Court reminds counsel that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). After the 1983 amendment, which added the language requiring a reasonable inquiry on the part of an attorney, the Second Circuit, in *Eastway Const. Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985), wrote that,

> [i]n light of the express intent of the drafters of the new Rule 11, and the clear policy concerns underlying its amendment, we hold that a showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed…against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Const. Corp.*, 762 F.2d at 254. The Court will not hesitate to consider sanctions if warranted.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' application (Docket No. 9) is granted in part and denied in part. The Third and Fourth causes of action alleging retaliation under Federal and State law may go forward. The remaining causes of action are dismissed.

IT IS SO ORDERED.

Dated: September 8, 2010
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
Charles J. Siragusa
United States District Judge