# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

STEPHANIE KLEEHAMMER,

Plaintiff,

-vs-

MONROE COUNTY and MONROE COUNTY
SHERIFF PATRICK O'FLYNN in his official
and individual capacity, et al.,

Defendants.

DECISION & ORDER

09-CV-6177-CJS

## APPEARANCES

For Plaintiff:             Steven Laprade, Esq.
                           Christina A. Agola, PLLC
                           1415 Monroe Avenue
                           Rochester, NY 14618

For Defendants:            Howard Stark, Esq.
                           Monroe County Department of Law
                           39 West Main Street
                           Room 307
                           Rochester, NY 14614

## INTRODUCTION

**Siragusa, J.** This case is before the Court on Defendants' motion for summary judgment, filed on March 29, 2012, ECF No. 25, seeking either entry of a final judgment, or, in the alternative, an order granting Defendants leave to amend their Answer to assert an affirmative defense ("that the plaintiff has failed to mitigate her damages"). On June 11, 2012, Plaintiff filed a cross-motion, ECF No. 31, seeking an Order striking the Affidavit of witness Jennifer M. Sommers, Esq. ("Sommers"), counsel to the Sheriff, pursuant to Federal Rules of Civil Procedure(26)(a)(1)(A) and 37(c)(1). For the reasons stated below, Plaintiff's cross-motion to strike is denied, Defendants' motion for summary judgment is

granted, and Attorney Christina A. Agola is directed to show cause why sanctions should not be imposed against her as discussed below.

## FACTUAL BACKGROUND

On April 16, 2009, Plaintiff Stephanie Kleehammer, a Deputy Sheriff Jailor, brought a sex discrimination claim against Monroe County and Patrick O'Flynn, Monroe County Sheriff, in his official and individual capacities. The portions of the complaint relevant to the pending motion are as follows:

> 10. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On January 26th, 2009, the U.S. Department of Justice issued a Notice of Right to Sue with regard to Plaintiff's claims. Less than 90 days have elapsed since the Plaintiff's receipt of her Notice of Right to Sue, and her subsequent filing of the original complaint in this matter.
>
> 11. Plaintiff is an individual woman who was at all times relevant herein an employee of defendant Monroe County, and a resident of the County of Monroe, State of New York.
>
> * * *
>
> 14. Plaintiff has been employed by the defendant since February 1998 as a "Deputy Sheriff Jailor."
>
> 15. Plaintiff maintained a stellar work record during her entire tenure.
>
> 16. In or about December 27, 2007, Plaintiff was subject to graphic live sex in the workplace when a female visitor masturbated in front of a male inmate in violation of well established jail policies.
>
> 17. Plaintiff was compelled to watch as there was no supervisor present and was told by male co-workers to "just sit there."
>
> 18. While Plaintiff "sat there," she was subject to lewd comments by her co-workers who stated, *inter alia,* "wow, she must have her whole fist up there" and "wonder if she has any female hygiene problems."
>
> 19. That Plaintiff's co-workers failed to follow the chain of command in response to Plaintiff's requests to contact a supervisor.

20. The entire incident was preserved by video tape, and by filing her charge of discrimination with the EEOC, Plaintiff duly requested that the video tape be preserved.

21. Plaintiff engaged in protected activity on January 14, 2008 when she complained to management about the events of December 27, 2007, and her co-worker's comments, which she believed in good faith constituted a hostile work environment.

22. Management failed to take any remedial action with regard to Plaintiff's good faith complaints.

23. The Plaintiff went on a compensable Worker's Compensation injury (major depression, anxiety disorder and NOS) which the Board determined was the result of Plaintiff's exposure to a hostile environment.

24. Thereafter, Plaintiff was subject to a continuous pattern of retaliation, including denial of work related leave ("Z time"), and has been compelled to return to work under the threat of discipline, despite her condition.

Compl. ¶¶ 10–11, 14–24.

On April 7, 2010, Defendants filed a motion seeking judgment on the pleadings. On September 8, 2010, the Court dismissed Plaintiff's 42 U.S.C. §1983 claims and hostile work environment claims while allowing Plaintiff's retaliation claims under Title VII and the New York State Human Rights Law ("NYSHRL") to continue, noting "[t]hough bare of amplifying factual allegations, Plaintiff's complaint, does allege that she engaged in a protected activity, and does allege that as a result of engaging in a protected activity she suffered an adverse action through the denial of Z time and through being required to return to work notwithstanding her alleged disability." *Kleehammer v. Monroe County*, 743 F. Supp. 2d 175, 188 (W.D.N.Y. 2010).

In her cross-motion, Plaintiff contends that Defendants failed to identify Sommers as a possible witness at any time prior to filing their memorandum of law. Pl.'s Mem. of Law, at 2, Jun. 11, 2011, ECF No. 31–1.

**STANDARDS OF LAW**

*Federal Rule of Civil Procedure 56*

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Of course, it is well-settled that courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted). However, the general rule holds that a plaintiff may not defeat a motion for summary judgment merely by relying on "purely conclusory allegations of discrimination, absent any concrete particulars which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d

Cir.1997) (citations and internal quotations omitted); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

### Title VII and NYSHRL Retaliation Claim

"[T]o prevail on a claim for retaliation under Title VII, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 207 (2d Cir. 2006) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). It is well settled that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629, n.1 (2d Cir. 1997), *cert den.* 522 U.S. 997 (1997). Unless otherwise noted, references to Title VII herein are also intended to refer to the NYSHRL.

The legal principles applicable to retaliation claims are as follows:

"Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). First, the plaintiff must establish a prima facie case of retaliation by showing: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Jute*, 420 F.3d at 173 (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001)). The plaintiff's burden in this regard is "*de minimis*," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id*. (internal quotation marks omitted).

If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Id*. The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id*. If so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id*. A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

*Hicks v. Baines*, 593 F.3d 159, 164–65 (2d Cir. 2010).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores Inc.*, 202 F. 3d 560, 566 (2d Cir. 2000). In deciding whether a particular activity amounts to protected activity, "the employment practices opposed by the plaintiff need not have 'actually amounted to a violation of Title VII.' Rather, the plaintiff must have had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (quoting *Wimmer v. Suffolk Co. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999), *cert. denied,* 528 U.S. 964 (1999)). Significantly, for purposes of this case, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's [complaint] was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

The anti-retaliation provision, 42 U.S.C. § 2000e–3, does not protect an individual from all retaliation, but only from retaliation that produces an injury or harm. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006). That injury or harm cannot be trivial as Title VII "does not set forth 'a general civility code for the American

workplace.'" *Id*. at 68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

***Rules 26 and 37***

Federal Rule of Civil Procedure 26 provides in pertinent part as follows:

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment….

Fed. R. Civ. P. 26(a)(1)(A). Rule 37 provides in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). "'The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence.'" *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)). Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution. *Ebewo*, 309 F. Supp. 2d at 607. The Second Circuit stated the following in *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006), with regard to precluding testimony:

> "[i]n determining whether the district court acted within its discretion, this Court [must] consider[ ] '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance….'" Thus, although a "bad-faith" violation of the Rule 26 is not required in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply.

*Design Strategy*, 469 F.3d at 296 (quoting *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) (citing *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)) (brackets in *Patterson*)).

## ANALYSIS

### *Plaintiff's Motion to Strike*

Defendants provided a response to Plaintiff's initial discovery disclosures which, they argue, identified Sommers as a witness. The initial response included this language:

> The defendants are currently unaware of any individuals likely to have discoverable information that they may use to support their defenses *apart from the individuals and entities identified by the plaintiff* in her initial Disclosures dated June 16, 2009.

Def.s' Initial Disclosures, Aug. 12, 2009 (attached to Pl.'s Appendix Vol. I as Ex. A, Jun. 11, 2012, ECF No. 31–3). Plaintiff's initial disclosures did not list Sommers as a witness, but did have, as an attachment, the August 26, 2008, letter from Sommers to Plaintiff. Pl.'s Initial Disclosures, Jun. 16, 2009, attached to Def.s' Ex. V, Jun. 22, 2012, ECF No. 32–1.

Defendants admit that their failure to specifically identify Sommers was an omission, but they state that it was inadvertent. Def.s' Mem. of Law, at 6, Jun. 22, 2012, ECF No. 32–2. Plaintiff argues that Defendants rely heavily on Sommers' affidavit to show that they took remedial action with regard to Plaintiff's initial complaint, and Defendants agree that Sommers' information is crucial. Def.s' Mem. of Law, at 7. On the issue of prejudice, Plaintiff claims that she was unable to depose Sommers, because only at the summary judgment stage did Defendants show that they were relying on Sommers' information, well after discovery had closed. In response, Defendants contend that since Plaintiff was aware from the letter attached to her initial disclosure, and since Plaintiff "was questioned

extensively about the Sommers Letter" during her deposition, Plaintiff was well aware not only of Sommers' information, but also of Defendants' reliance on it. Further, Defendants argue that Plaintiff has referenced Sommers' declarations in opposing their summary judgment motion and, thus, "[r]ather than being prejudiced by the Sommers Declarations, Kleehammer has benefit[t]ed by them." Def.s' Mem. of Law, at 4 & 7, Jun. 22, 2012, ECF No. 32–2. Finally, with regard to a continuance, Defendants conceded that in fairness, Plaintiff could certainly request a continuance to permit her to depose Sommers and that a continuance was feasible since this case has not been set for trial.

At oral argument, the Court offered Plaintiff the opportunity to depose Sommers, and Plaintiff did so on September 14, 2012. Since Plaintiff was obviously aware of Sommers from the time of the initial disclosures, and since Plaintiff has now had the opportunity to depose her, the Court denies Plaintiff's motion to strike on the ground that Defendants' omission of Sommers' name in its initial disclosures was harmless.

### Alleged Retaliatory Acts

Plaintiff alleges that she was engaged in the protected activity of reporting a hostile work environment to her employer, and that Defendants were aware of her protected activity. Plaintiff argues that she was subjected to the following three adverse actions by Defendants: (1) she was found to have violated the Sheriff's policy for not reporting the visits incident; (2) she was denied New York General Municipal Law section 207–c benefits; and (3) Dr. Supnik and Dr. Shmigel improperly cleared her to return to work. Kleehammer Mem. of Law, at 11, 13.

Defendants concede that Sheriff O'Flynn was aware of Plaintiff's oral and written complaint regarding the incident at issue, but contend that Plaintiff did not: (1) engage in

a protected activity; (2) suffer an adverse employment action; and (3) show a causal connection between her complaint about the incident and any alleged adverse employment action.

At the onset, the Court must identify the allegedly retaliatory acts upon which Plaintiff relies. In her memorandum of law in opposition to summary judgment, Plaintiff states that she, "was subject to multiple adverse actions following her engagement in protected activity. Plaintiff was found to have violated County policy for not reporting the graphic sexual behavior she witnessed in the visiting room, in spite of the fact that she was intimidated and prevented from reporting the incident by her male co-workers…." Pl.'s Mem. of Law at 9, Jun. 11, 2012, ECF No. 30. In her complaint, however, Plaintiff claims the following actions as retaliatory:

> 24. Thereafter, Plaintiff was subject to a continuous pattern of retaliation, including denial of work related leave ("Z time"), and has been compelled to return to work under the threat of discipline, despite her condition.…

> THIRD CAUSE OF ACTION RETALIATION UNDER TITLE VII….

> 45. Defendants, and each of them, engaged in a pattern of illegal retaliation in violation of Title VII of the Civil Rights Act of 1964 by failing to take any remedial action whatsoever in regards to her complaints of what she believed in good faith to be a hostile environment. As a result thereof, defendant has denied Plaintiff Z time and has otherwise compelled her to return to work under the threat of discipline despite the fact that she remains on leave due to a compensable worker's compensation claim. Defendant had no legitimate business reason for any such act.

> FOURTH CAUSE OF ACTION RETALIATION UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW SECTION 290 *et seq*.…

> 50. Defendants, and each of them, engaged in a pattern of illegal retaliation in violation of New York State Human Rights Law, Executive Law Section 290, *et seq*. by failing to take any remedial action whatsoever in regards to her complaints of what she believed in good faith to be a hostile

environment. As a result thereof, defendant has denied Plaintiff "Z" time, and has otherwise compelled her to return to work under the threat of discipline despite the fact that she remains on leave due to a compensable worker's compensation claim. Defendant had no legitimate business reason for any such act.

Compl. ¶¶ 24, 45 & 50, Apr. 16, 2009, ECF No. 1. The Court will address the alleged incidents of retaliation raised both in the complaint, and in Plaintiff's memorandum of law.

### *Title VII and NYSHRL Retaliation Claims*

Assuming, *arguendo*, that Plaintiff has met her burden of showing that she was engaged in protected conduct by reporting the offensive comments and the visitor's actions, she has not established that Defendants retaliated against her for doing so.

#### *Disciplinary Actions*

First, with regard to the violation of the Sheriff's policy, all the deputies in the room that day failed to take action to stop the violation, and all were disciplined, except Plaintiff. Sommers Sealed Decl. ¶¶ 10 & 12; O'Flynn Decl. ¶ 6. Since she was not disciplined, Plaintiff cannot argue that the Sheriff's disciplining of the other deputies, none of whom reported the incident, might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Second, in her complaint, Plaintiff alleges that one way in which Defendants retaliated against her was by failing to take any remedial action. Compl. ¶¶ 45 & 50. This assertion fails to state a claim for Title VII retaliation. *Rojas v. Roman Catholic Diocese of Rochester*, 557 F. Supp. 2d 387, 400 (W.D.N.Y. 2008) ("To the extent that Plaintiff is alleging that the materially adverse retaliatory act was DOR's alleged failure to take remedial action, the Court agrees that the allegations fail to state a claim for retaliation."). Additionally, the claim is false. The evidence before the Court shows definitively that all four men were disciplined and that they were immediately reassigned

to separate them from Plaintiff. Defendants have filed, under seal, the records showing that the four male Monroe County Sheriff's deputies involved in allegedly creating a hostile working environment received discipline, ranging from suspensions to termination. Sommers Sealed Reply Decl., Oct. 25, 2012, ECF No. 40.

### *Z Time*

Next, Plaintiff contends that as part of Defendants' retaliation against her, she was denied what she terms as "Z time," a reference to New York General Municipal Law § 207-c benefits. Z time and workers' compensation are two separate programs. *Balcerak v. County of Nassau*, 94 N.Y.2d 253, 261 (1999) ("no identity of issue inheres in determinations regarding these two types of benefits."). Defendant informed Plaintiff on more than one occasion that she needed to fill out a Report of Injury in order to receive benefits under § 207–c, but Plaintiff failed to do so, stating that her attorney advised her not to apply for them.

Plaintiff's counsel, Christina A. Agola, Esq., in her reply papers, discusses in detail the unrelated case of Monroe County Sheriff's Deputy Thomas C. Zembiec ("Zembiec"). Ms. Agola contends that although Zembiec did not file a Report of Injury, Defendants did not deny him § 207-c benefits for failing to so file. Agola Supp'l Decl. ¶¶ 14–30. She affirmatively stated in her sworn declaration submitted in this case that Zembiec did not complete a form MB #4, which is the Report of Injury form, and that he never submitted that form. *Id*. However, Howard Stark, Esq., Defendants' attorney, maintains that these sworn representations by Ms. Agola are not true. In that regard, Ms. Agola represented Zembiec in the trial court before the Honorable David C. Larimer, and during the appeal to the Second Circuit. Mr. Stark points out that included the exhibits before Judge Larimer

was the MB #4 form completed and submitted by Zembiec. *Zembiec v. County of Monroe*, No. 09-CV-6075-DGL-MWP (W.D.N.Y. Feb. 23, 2011), MB-04-05 Report of Employee Injury (Feb. 8, 2008), *attached as* Ex. 2 to Memorandum in Opposition to Cross-Motion to Amend Complaint, filed Jan 19, 2010, ECF No. 26–4. Moreover, Mr. Stark points out that the same form was part of the Joint Appendix on appeal. *Zembiec v. County of Monroe*, No. 11-777-cv, 468 Fed. App'x 39 (2d Cir. 2012), Joint Appendix Petition Exhibit AA. Therefore, Ms. Agola's argument as to Zembiec is not only unsupported by evidentiary proof, but directly contradicted by the evidentiary proof known to Ms. Agola.

### *Order to Return to Work*

Finally, Plaintiff argues that Defendants retaliated against her by ordering her to return to work before she was medically cleared to do so, and terminated her as a result of her failure to return to work as ordered. Although Plaintiff was receiving workers' compensation benefits, she was not thereby excluded from returning to work that was consistent with any medical restrictions. *Matter of North v. New Venture Gear*, 56 A.D.3d 931 (N.Y. App. Div. 3d Dep't 2008). On March 3, 2009, Jay A. Supnik, Ph.D., a psychologist, cleared Plaintiff to return to work in a limited duty capacity with special conditions.[1] Boris Shmigel, M.D., cleared Plaintiff for return to work in a limited duty capacity on March 9, 2009. Plaintiff was advised by phone on March 13, 2009, and in

---

[1]In a letter dated March 3, 2009, Dr. Supnick wrote, "it is my clinical opinion that it is in Deputy Kleehammer's best interest to make an attempt to return to work in a limited duty capacity." Defs.' Mot. for Summ. J., Ex. C. He then set out the conditions: "The assignment should be one in which she is protected from interacting with the members of the department about whom she made complaints stemming from the December, 2007 incident. If at all possible, her supervisor should be changed for this assignment. She should be given an assignment where she could be doing some form of support work in an administrative capacity. Her hours should start off with some flexibility to increase as she becomes more able to tolerate increased time, perhaps starting with a maximum of only four hours per day.

writing that both doctors cleared her to return to work and that she would be reassigned to Staff Services, and she was consequently ordered to return to work. Kleehammer Dep. 115:2–7. However, Plaintiff refused to return to work, stating that she "still was underneath the Workmen's Comp. I was not cleared through my doctors." *Id*. 117:9–10. She also claimed that she was unaware of whether she could go back to work if not cleared by her doctors. *Id*. 117:19–21. Plaintiff conceded, though, that she was represented on the workers' compensation case by counsel and could have sought advice from counsel. Kleehammer Dep. 118:18–24.

Plaintiff admitted at her deposition that she received formal charges alleging she was insubordinate for failing to report to work and that she could request, or waive, a departmental hearing. Kleehammer Dep. 120–21. In any event, Plaintiff was not disciplined, but counseled. *Id*. 126:10–12. Subsequently, Plaintiff informed Defendants that she did not want to exercise her right to a pre-separation hearing, indicated that she was medically unable to return to work, and acknowledged that she would be terminated effective February 19, 2010. *Id*. 130:8–17. Thereafter, in a letter dated January 14, 2010, Plaintiff was advised she could seek reinstatement, but she chose not to do so. *Id*. 132:7–16. The visit incident occurred on January 13, 2008, and it was not until March 2009 when Plaintiff was ordered to return to work in a limited duty capacity.

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Here, Plaintiff has not carried her burden to show that Defendants retaliated against her. She has not shown that their non-

discriminatory explanations for not determining whether she was entitled to benefits under § 207–c, or ordering her back to work on a limited duty basis, were false, and that the real reason for doing so was retaliation. Moreover, she has not shown that her termination, thirteen months following the visit incident, was causally related to her report of the visit incident. Therefore, Defendants are entitled to judgment on the remaining causes of action.

### *Mr. Stark's Allegation that Ms. Agola Perjured Herself*

In the "Reply Declaration of Howard A. Stark to Agola Supplemental Declaration," Oct. 25, 2012, ECF No. 39, Mr. Stark raised what he described as, "Ms. Agola's Lack of Candor with This Court Regarding Deputy Zembiec." *Id*., at 5 (emphasis removed). Mr. Stark directly points out that "Ms. Agola states under penalties of perjury in her Supplemental Declaration that Zembiec never completed or submitted an MB #4. That statement is untruthful and Ms. Agola is chargeable with knowledge of its untruthfulness." *Id*. ¶ 25. Since Defendants have raised this most serious issue of false swearing by Ms. Agola, the Court, aware of its inherent responsibility to preserve the integrity of the judicial system, must address the matter. *See Derzack v. County of Allegheny, Pa*., 173 F.R.D. 400, 418 (W.D. Pa. 1996) ("[T]his Court simply cannot shirk its obligation and responsibility … to the judicial system as an institution which must preserve its integrity in order to continue to fully and fairly preside over the claims of all litigants who come before it.").

Accordingly, the Court has no choice but to require Ms. Agola to show cause in writing why sanctions should not be imposed on her for violating Federal Rule of Civil Procedure 11 regarding her sworn statements submitted in opposition to Defendants' motion for summary judgment. Ms. Agola is to address the following sworn statements:

CHRISTINA A. AGOLA, ESQ., pursuant to 28 U.S.C. § 1746 declares under the penalty of perjury the following:…

16. I have personally represented Mr. Zembiec in all related legal proceedings relative to his application for 207-c benefits and am fully familiar with the pertinent facts and circumstances of the same.…

19. Prior to applying for section 207-c benefits, Mr. Zembiec (who had been out of work for months) did not complete a form MB #4.…

30. … Although the County has appealed that decision, the fact remains: Mr. Zembiec was awarded section 207-c benefits, and he never submitted a form MB #4.

Agola Supp'l Decl. ¶¶ 16, 19 & 30.[2] Further, Ms. Agola is directed to discuss the above assertions in her supplemental declaration in view of the exhibits at the trial and appellate levels showing that Deputy Sheriff Zembiec *did* submit an MB #4 form (Report of Employee Injury). *See*, *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89-91 (2d Cir. 2003) (Holding that court must apply "bad faith" standard where it raises Rule 11 sanction issue *sua sponte*, when attorney no longer has opportunity to withdraw the offending submission); *see also, Arclightz and Films Pvt., Ltd. v. Video Palace, Inc.*, No. 01 Civ.10135(SAS), 2003 U.S. Dist. LEXIS 19086, 2003 WL 22434153 at *7 (S.D.N.Y. Oct. 24, 2003) ("Bad faith conduct may include pursuing frivolous contentions, frivolous motions, or intentionally dilatory conduct.") (citations and internal quotation marks omitted).

## CONCLUSION

Plaintiff's cross-motion to strike, ECF No. 31, is denied and Defendants' motion for summary judgment, ECF No. 25, is granted. The Clerk is directed to enter judgment for Defendants, but not to close this case. In light of this disposition, Plaintiff's additional

---

[2]It appears that these statements by Ms. Agola were intended to suggest that Defendants in this case were not being truthful when they represented to the Court that the reason Plaintiff was denied the Z benefits was because she did not fill out the form.

motion to amend the answer is denied as moot. Attorney Christina A. Agola is directed to respond to this Court's order, above, by December 11, 2012. Failure to respond may result in sanctions being imposed without further hearing.

IT IS SO ORDERED.


Dated:   November 27, 2012
         Rochester, New York

                        ENTER:

                                 /s/ Charles J. Siragusa
                                 CHARLES J. SIRAGUSA
                                 United States District Judge