# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

STEPHANIE KLEEHAMMER,

Plaintiff,

-vs-

Monroe County and Patrick O'Flynn, *Monroe County Sheriff, In His Official and Individual Capacities*,

Defendants.

DECISION & ORDER

09-CV-6177-CJS

## APPEARANCES

| | |
|---|---|
| For Christina A. Agola, Esq.: | Paul Cambria Jr., Esq.<br>42 Delaware Avenue<br>Suite 120<br>Buffalo, NY 14202<br>(716) 849-1333 |
| For Howard A. Stark, Esq. &<br>Jennifer M. Sommers, Esq.: | Michele Romance Crain, Esq.<br>Assistant Monroe County Attorney<br>Monroe County Department of Law<br>39 West Main Street Room 307<br>Rochester, NY 14614<br>(585) 753-1433 |

## INTRODUCTION

**Siragusa, J.** This case is before the Court for a determination under Federal Rule of Civil Procedure 11. In its Decision and Order, Nov. 27, 2012, ECF No. 42, granting Defendants' summary judgment, the Court, *sua sponte*, directed Christina A. Agola, Esq., to show cause why sanctions should not be imposed. For the reasons stated below, the Court, after conducting a hearing, determines that Christina A. Agola, acting in bad faith, violated Rule 11.

## BACKGROUND

A brief procedural history of the case is of assistance in providing context for the matter presently before the Court. Plaintiff's complaint, filed April 16, 2009, ECF No. 1, alleged six causes of action. The FIRST alleged a hostile work environment claim pursuant to Title VII of the Civil Rights Act of 1964, as amended. The SECOND alleged a hostile work environment claim pursuant to New York State Human Rights Law, Executive Law Section 290 *et seq.* The THIRD alleged retaliation in violation of Title VII. The FOURTH alleged retaliation in violation of New York law. The FIFTH alleged sexual harassment in violation of the Equal Protection clause pursuant to 42 U.S.C. § 1983. The SIXTH alleged a *Monell*[1] claim, pursuant to 42 U.S.C. § 1983.

By Decision and Order entered on September 30, 2010, ECF No. 16, the Court granted Defendants' motion for judgment on the pleadings as to all but the two retaliation claims. In allowing the retaliation claims to go forward, the Court wrote:

> At oral argument, however, Plaintiff's counsel represented that the basis for her client's claim was *not* the letter from Sommers, but something else. Defense counsel was unaware of *anything* other than the Sommers letter that could be construed as retaliatory and the Court determined that the Sommers letter is too remote in time and insufficiently adverse … for a plausible basis for a retaliation complaint under either Federal or State law. In the complaint, Plaintiff alleges that, "defendant [sic] has denied Plaintiff Z time[2] and has otherwise compelled her to return to work under the threat of discipline despite the fact that she remains on leave due to a compensable worker's [sic] compensation claim." (Compl. ¶ 45.) The Court inquired of Plaintiff's counsel about any further factual information, since she denied that the Sommers letter formed any basis for this retaliation claim, but counsel knew nothing but what was alleged in the complaint. Though bare of amplifying factual allegations, Plaintiff's complaint, does allege that she engaged in a protected activity, and does

---

[1] *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).

[2] As more fully explained below, at 13, Z time refers to benefits under New York General Municipal Law § 207-c to which a Sheriff's Deputy injured in the performance of her duties is entitled.

> allege that as a result of engaging in a protected activity she suffered an adverse action through the denial of Z time and through being required to return to work notwithstanding her alleged disability. Therefore, the complaint meets the standard set by *Twombly* and *Iqubal* with regard to the Third and Fourth causes of action. Accordingly, Defendants' motion to dismiss must be denied with regard to the Third and Fourth causes of action.

Decision and Order at 18–19. "Sommers" refers to Jennifer M. Sommers, the Sheriff's Counsel. Appearing for Ms. Agola at oral argument was her employee, Seeta Persaud, Esq., then a member of the Agola law firm. However, the papers submitted in opposition to Defendants' motion for judgment on the pleadings, including a declaration, memorandum of law, and certificate of service, were signed by Christina A. Agola, Esq.

Also included in the Court's decision was the following:

> The Court cautioned counsel on the record that she needed a good faith basis for pleading the retaliation claim, especially since she denied that the Sommers letter was the basis for that claim. The Court repeats that Federal Rule of Civil Procedure 11 requires all counsel, as officers of the court, to make only those claims that are supported by a good faith factual basis. In that regard, the Court reminds counsel that:
>
>> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). After the 1983 amendment, which added the language requiring a reasonable inquiry on the part of an attorney, the Second Circuit, in *Eastway Const. Corp.v. City of New York*, 762 F.2d 243 (2d Cir. 1985), wrote that,

> [i]n light of the express intent of the drafters of the new Rule 11, and the clear policy concerns underlying its amendment, we hold that a showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed…against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Const. Corp.*, 762 F.2d at 254. The Court will not hesitate to consider sanctions if warranted.

Decision and Order at 19–20, Sept. 30, 2010, ECF No. 16.[3] The point the Court is trying to make in relating the procedural history, prior to Defendants' summary judgment application, which gave rise to this sanctions inquiry, is this: **In the context of this specific case and the remaining retaliation claims, Ms. Agola was explicitly placed on notice of the requirements of Federal Rule of Civil Procedure 11, and cautioned about the importance of adhering to such requirements.**

Subsequently then, on March 29, 2012, ECF No. 25, Defendants brought a motion for summary judgment on the two remaining retaliation claims. In opposing Defendants' application for summary judgment, Ms. Agola essentially argued that Ms.

---

[3] The Court notes that *Eastway* was "decided before Rule 11 was revised in 1993 to include crucial language that 'the court *may* impose an appropriate sanction.'" *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (quoting Fed. R. Civ. P. 11(c)(1) (emphasis added)).

Sommers' explanation that Plaintiff was denied 207-c benefits because she did not file a requisite MB #4 form was, pretextual. More specifically, Ms. Agola filed a supplemental declaration, October 19, 2012, ECF No. 38, in which she swore, in relevant part, that:

> 6. Rather, the pertinent facts established here by Plaintiff, and not controverted by the Defendants, establish the following in support of Plaintiff's retaliation claims:
>
> a. Plaintiff was denied section 207-c benefits, ostensibly because she failed to complete and submit a "form MB#4" (which, as shown below, is not a valid reason for denial)….

Agola Supp'l Dec'l ¶ 6. In support of her argument that Sommers' basis for denial was pretextual, Ms. Agola referenced a case before the Honorable David G. Larimer of this Court, in which she represented another Sheriff's Deputy, Sergeant Thomas Zembiec. In that regard she stated the following in her supplemental declaration filed in this case:

> 15. As an example, this firm represents Thomas Zembiec, a deputy sheriff employed in the jail bureau (like Plaintiff in this action) with respect to Mr. Zembiec's pursuit of section 207-c benefits.
>
> 16. I have personally represented Mr. Zembiec in all related legal proce-edings relative to his application for 207-c benefits and am fully familiar with the pertinent facts and circumstance of the same.
>
> 17. In Mr. Zembiec's case, Dr. Shmigel issued an employee work status report for Mr. Zembiec in which he indicated Mr. Zembiec "May NOT Return to Work." See Exhibit "C".
>
> 18. Pursuant to Dr. Shmigel's determination that Mr. Zembiec could not return to work, I submitted on Mr. Zembiec's behalf a letter on December 4, 2009 to then-Undersheriff Gary Caiola, requesting section 207-c benefits. A true and correct copy of the December 4, 2009 letter is annexed hereto as Exhibit "D".
>
> 19. **Prior to applying for section 207-c benefits, Mr. Zembiec (who had been out of work for months) did not complete a form MB #4**.
>
> 20. The Sheriff's Department did not respond to my December 4, 2009 written request for section 207-c benefits for Mr. Zembiec, so I submitted another letter, to then-Undersheriff William Sanborn, on July 13, 2010, again reiterating my request for section 207-c benefits as originally

requested on December 4, 2009. See Exhibit "E".

21. The Sheriff's Department responded in the form of a July 19, 2010 letter from the Sheriff's counsel, Jennifer M. Sommers, to me in which Ms. Sommers denied Mr. Zembiec's application for section 207-c benefits. A true and correct copy of Ms. Sommers' July 19, 2010 letter is annexed hereto as Exhibit "F".

22. In her July 19, 2010 letter, Ms. Sommers cited various reasons why the Sheriff's Department was denying Mr. Zembiec's application for section 207-c benefits, including the following: fitness for duty "is not dispositive relative to GML §207-c benefits"; the fact certain prior request(s) for benefits had been denied by N.Y. State Supreme Court Justice Harold Galloway; and the fact Mr. Zembiec had not returned to Dr. Shmigel's office.

23. However, nowhere in her July 19, 2010 letter did attorney Sommers ever indicate the fact Mr. Zembiec had not completed a form MB # 4 was one of the ground(s) upon which the denial of his application for section 207-c benefits was based.

* * *

29. Moreover, attorney Sommers' credibility on this point is undercut by the fact that, during her deposition, despite her obvious involvement in Mr. Zembiec's case (as evidenced by Exhibit F), she denied that any employee of the Sheriff's Department has received section 207-c benefits without first submitting an MB #4 form. See Sommers EBT Transcript, Exhibit A, at P. 71, Line 12 - P. 73, Line 5.

30. This is simply incorrect, as Mr. Zembiec has been awarded section 207-c benefits by Order of the New York State Supreme Court (*See* Exhibit H). Although the County has appealed that decision, **the fact remains: Mr. Zembiec was awarded section 207-c benefits, and he never submitted a form MB #4**.

Agola Suppl. Decl. ¶¶ 15–23 & 29–30, Oct. 19, 2012, ECF No. 38 (emphasis added).

The allegations of misconduct on the part of Christina A. Agola originated from the Reply Declaration, October 25, 2012, ECF No. 39, filed by opposing counsel, Howard A. Stark, Esq., in response to Ms. Agola's supplemental declaration. The Court reproduces the entire section, under the title provided by Mr. Stark:

**Ms. Agola's Lack [o]f Candor With This Court Regarding Deputy Zembiec**

18. Ms. Agola states that the defendants' assertion that they did not provide Kleehammer with General Municipal Law § 207-c {*GML § 207-c*} benefits because she did not complete an MB#4 (Report of Employee Injury), is disingenuous.[4] ***Agola Supplemental Declaration, ¶12.*** In support of that contention Ms. Agola points to the case of the Monroe County Sheriff's Deputy Thomas C. Zembiec {***Deputy Zembiec***}. ***Agola Supplemental Declaration, ¶12.***

19. Ms. Agola states that although Deputy Zembiec did not file a MB#4 (Report of Employee Injury) the defendants failed to assert that omission as a basis for denying him GML § 207-c benefits. *Agola Supplemental Declaration, ¶¶ 14-30.*

20. Specifically Ms. Agola states that:

"[p]rior to applying for section 207-c benefits Mr. Zembiec (who had been out of work for months) did **not** complete a form MB #4." [Emphasis supplied.]

***Agola Supplemental Declaration, ¶ 19.***

"he [Zembiec] **never** submitted a form MB #4." [Emphasis supplied.]

***Agola Supplemental Declaration, ¶ 30.***

21. Ms. Agola acknowledges that she has, personally represented Mr. Zembiec in all related legal proceedings relative to his application for 207-c benefits and [is] **fully familiar** with the pertinent facts and circumstances of the same. [Emphasis supplied.]

***Agola Supplemental Declaration, ¶ 16.***

22. Ms. Agola was attorney of record for Deputy Zembiec in *Thomas C. Zembiec v. County of Monroe, et al. 09-cv-6075* [*DGL*], and on its appeal to the Second Circuit [*Thomas C. Zembiec v. County of Monroe, 468 Fed. Appx. 39 (2d. Cir. 2012)*].

23. Zembiec's MB#4 was an exhibit [*Thomas C. Zembiec v. County of Monroe, et al. 09-cv-6075, Docket No. 26-3*] in the defendants' response to Zembiec's cross-motion to amend his Complaint [*Thomas C. Zembiec v. County of Monroe, et al. 09-cv-6075, Docket No.21*]. *See, also*

---

[4] Merriam-Webster's online dictionary, http://www.merriam-webster.com (last visited Mar. 18, 2012) defines disingenuous as: "lacking in candor; *also* **:** giving a false appearance of simple frankness **:** calculating." The Oxford English Dictionary, online, http://oed.com (last visited Mar. 18, 2012), contains a similar definition: "The opposite of ingenuous; lacking in candour or frankness, insincere, morally fraudulent. (Said of persons and their actions.)"

*Defendants' Exhibit V: Zembiec MB#4 (Report of Injury)* [which reflects the District Court's filing entry information at the top of each page].

24. Zembiec's MB#4 was also a part of the Joint Appendix in *Thomas C. Zembiec v. County of Monroe, 468 Fed. Appx. 39 (2d. Cir. 2012)*. See, also *Defendants' Exhibit AA: Zembiec MB#4 (Report of Injury)* [which reflects the Court of Appeals' filing entry information at the top of each page].

25. **Ms. Agola states under penalties of perjury in her Supplemental Declaration that Zembiec never completed or submitted an MB #4. That statement is untruthful and Ms. Agola is chargeable with knowledge of its untruthfulness**.

Stark Decl. ¶¶ 18–25, Oct. 25, 2012, ECF No. 39 (emphasis added).

Confronted with Mr. Stark's allegation that Ms. Agola had made a statement that "is untruthful and Ms. Agola is chargeable with knowledge of its untruthfulness," the Court intentionally waited to issue its Decision and Order on Defendants' summary judgment application. In that regard, the Court assumed that, prior to its issuing a decision, one of two things would occur. Either Ms. Agola would protest outright Mr. Stark's attack on her integrity and deny his allegations to avoid a grant of summary judgment against her client, or she would withdraw or correct "the challenged paper, claim, defense, contention, or denial" within 21 days after service of Mr. Stark's allegations to avoid any Rule 11 sanction, pursuant to the safe harbor provision of Rule 11.[5] Fed. R. Civ. P. 11(c)(2). However, since Ms. Agola took no action whatsoever to address Mr. Stark's accusation, the Court issued its Decision and Order granting Defendants' application for summary judgment on November 27, 2012, ECF No. 42,

---

[5] Since Ms. Agola's supplemental declaration was made pursuant to 28 U.S.C. § 1746, Mr. Stark's accusation was one of perjury. The Court cannot envision a more serious accusation that could be leveled by one attorney against another in the course of a lawsuit, or one that more calls into question the integrity of the judicial system. One might have expected Ms. Agola to reply immediately, or, at a minimum, immediately request permission of the Court to file a reply and request that in the interim the Court defer ruling on the pending summary judgment motion.

over a month after Mr. Stark filed his Reply Declaration, ECF No. 39. In that Decision

and Order, pertinent to the matter currently under consideration, the Court wrote:

> In the "Reply Declaration of Howard A. Stark to Agola Supplemental Declaration," Oct. 25, 2012, ECF No. 39, Mr. Stark raised what he described as, "Ms. Agola's Lack of Candor with This Court Regarding Deputy Zembiec." *Id.*, at 5 (emphasis removed). Mr. Stark directly points out that "Ms. Agola states under penalties of perjury in her Supplemental Declaration that Zembiec never completed or submitted an MB #4. That statement is untruthful and Ms. Agola is chargeable with knowledge of its untruthfulness." *Id.* ¶ 25. Since Defendants have raised this most serious issue of false swearing by Ms. Agola, **the Court, aware of its inherent responsibility to preserve the integrity of the judicial system**, **must address the matter**. *See Derzack v. County of Allegheny, Pa.*, 173 F.R.D. 400, 418 (W.D. Pa. 1996) ("[T]his Court simply cannot shirk its obligation and responsibility … to the judicial system as an institution which must preserve its integrity in order to continue to fully and fairly preside over the claims of all litigants who come before it.").
>
> Accordingly, the Court has no choice but to require Ms. Agola to show cause in writing why sanctions should not be imposed on her for violating Federal Rule of Civil Procedure 11 regarding her sworn statements submitted in opposition to Defendants' motion for summary judgment. Ms. Agola is to address the following sworn statements:
>
>> CHRISTINA A. AGOLA, ESQ., pursuant to 28 U.S.C. § 1746 declares under the penalty of perjury the following:…
>>
>> 16. I have personally represented Mr. Zembiec in all related legal proceedings relative to his application for 207-c benefits and am fully familiar with the pertinent facts and circumstances of the same.…
>>
>> 19. Prior to applying for section 207-c benefits, Mr. Zembiec (who had been out of work for months) did not complete a form MB #4.…
>>
>> 30. … Although the County has appealed that decision, the fact remains: Mr. Zembiec was awarded section 207-c benefits, and he never submitted a form MB #4.
>
> Agola Supp'l Decl. ¶¶ 16, 19 & 30. Further, Ms. Agola is directed to discuss the above assertions in her supplemental declaration in view of the exhibits at the trial and appellate levels showing that Deputy Sheriff Zembiec *did* submit an MB #4 form (Report of Employee Injury). *See, In re*

> *Pennie & Edmonds LLP*, 323 F.3d 86, 89-91 (2d Cir. 2003) (Holding that court must apply "bad faith" standard where it raises Rule 11 sanction issue *sua sponte*, when attorney no longer has opportunity to withdraw the offending submission); *see also, Arclightz and Films Pvt., Ltd. v. Video Palace, Inc.*, No. 01 Civ.10135 (SAS), 2003 U.S. Dist. LEXIS 19086, 2003 WL 22434153 at *7 (S.D.N.Y. Oct. 24, 2003) ("Bad faith conduct may include pursuing frivolous contentions, frivolous motions, or intentionally dilatory conduct.") (citations and internal quotation marks omitted).

Decision and Order at 15-16, Nov. 27, 2012, ECF No. 42 (emphasis added). Parenthetically, the Court notes that it is puzzled as to why Defendants did not themselves make an application for sanctions pursuant to the procedures set forth in Rule 11(c)(2), especially in light of the most serious nature of Mr. Stark's allegations concerning Ms. Agola. Had such an application been properly made, the bad faith standard to which the Court referred in its Decision and Order, ECF No. 42, as detailed above, would not apply. Rather, as the Second Circuit explained in *Marfo v. Weiss*, 213 F.3d 55 (2d Cir. 2000):

> [T]he 1993 Advisory Committee Note explains that Rule 11(b)(2) "establishes an objective standard, intended to eliminate any '**empty-head pure-heart' justification for patently frivolous arguments**." Fed. R. Civ. P. 11 advisory committee note to 1993 amendments.

*Id.* at 64 (emphasis added).

In response to the Court's direction that she address Mr. Stark's allegations, Ms. Agola submitted an Amended Declaration, December 19, 2012, ECF No. 45, in which she swore that, "[a]s set forth more fully below, Mr. Stark's allegations of 'lack of candor' on my part are wholly without basis in fact." *Id.* ¶ 4. In support of this contention, she went on to offer that after she became Sergeant Zembiec's lawyer, he did not file an MB #4 form, but that she was nonetheless able to obtain 207-c benefits for him. *Id.* ¶ 9. In other words, she claims that Sergeant Zembiec was not required to file an MB #4 form

as a condition precedent to the 207-c benefits he was awarded during the time she was his counsel. Consequently, she maintains that the statements in her Supplemental Declaration of which Mr. Stark complains were true, not false, and that Rule 11 sanctions should not be imposed.

Ms. Sommers submitted a Reply Declaration, Oct. 25, 2012, ECF No. 39-1, to Ms. Agola's Amended Declaration, in which she averred that,

2. Ms. Agola's central claim regarding Deputy Zembiec is false.

3. Specifically, Ms. Agola states that:

"[p]rior to applying for section 207-c benefits Mr. Zembiec (who had been out of work for months) did **not** complete a form MB #4." [Emphasis supplied.]

***Agola Supplemental Declaration*, ¶ *19.***

"he [Zembiec] **never** submitted a form MB #4." [Emphasis supplied.]

***Agola Supplemental Declaration*, ¶ *30.***

4. Those assertions are simply untrue. Deputy Zembiec, like every other employee of the Monroe County Sheriff, was required to complete an MB#4 (Report of Injury) form before requesting New York General Municipal Law §207-c {***GML §207-c***} benefits, and **he did so**. See, **Defendant's Exhibit V:** *Zembiec MB#4 (Report of Injury).*

5. Significantly, in the first paragraph of the narrative portion of his MB#4 (Report of Injury) Deputy Zembiec noted that, like plaintiff Stephanie Kleehammer {***Kleehammer***}, the form was sent to him by a supervisor and he was directed to complete and return it ["Supt. Harling: Today, February 8, 2008, I received a **Report of Employee Injury** form from you along with your request that it be returned to you no later than February 12, 2008." **Defendant's Exhibit V:** *Zembiec MB#4 (Report of Injury).*]

6. Unlike Kleehammer, Deputy Zembiec complied with the directive.

7. Therefore, Ms. Agola's claims that Zembiec received benefits without first submitting an MB#4 are **totally untrue**.

*Id.* ¶¶ 2–7 (some emphasis added).

The Court held a hearing in connection with this Rule 11 proceeding on January 25, 2013. Ms. Agola was represented by Paul Cambria, Esq., and Mr. Stark and Ms. Sommers were represented by Michele Romance Crain, Esq. On behalf of Ms. Agola, Mr. Cambria contended:

> In the declaration[6] that Ms. Agola submitted, she made it clear what she was trying to convey and why. In her mind, and I think the decisions in the state court[7] back her up there are two separate applications. There is one in '08, which she did not handle. And one in '09. And that she was speaking at all times concerning the one in '09. And she then points out that in the state court proceedings in the Article 78, part of the County's defense was, well, we've already denied this, alluding to their '08, and, of course, the Court disagreed with that and said this is a separate matter. And so if it's a separate matter from the standpoint of the merits of the claim, then it seems to me that it's a separate matter from the standpoint of declarations by the advocates.

Real Time Transcript of Proceedings at 13–14, Jan. 25, 2013. In that regard, the lynchpin of Mr. Cambria's argument seems to be that Defendants' position, that only one MB #4 form was required to be submitted per injury, was merely their interpretation of the Monroe County Sheriff's General Order 18-07 concerning the filing of an MB #4 form, and therefore, "you can't say that what she said was false until you first find an interpretation that says that what they say is true, she knew it and she disregarded it." Real Time Transcript of Proceedings at 16–17, Jan. 25, 2013. He further argued that apart from the issue of truth, Ms. Agola made her representations in good faith.

---

[6] Apparently, Mr. Cambria was referring to Ms. Agola's Amended Declaration, ECF No. 45.
[7] Mr. Cambria was referring to the decisions by Justices Vanstrydonck (*Zembiec v. County of Monroe*, No. 10/09535 (N.Y. Sup. Ct. Apr. 19, 2012)), Galloway (*Zembiec v. County of Monroe*, No. 09/14393 (N.Y. Sup. Ct. Mar. 25, 2010)) and Rosenbaum (*Zembiec v. County of Monroe*, No. 2010-09535 (N.Y. Sup. Ct. Sept. 16, 2010)) of the New York State Supreme Court, which were attached to Ms. Agola's Amended Declaration, ECF No. 45, all of which the Court has reviewed.

General Order 18-07 provides in pertinent part as follows:

II. Injuries on Duty

A. Any employee injured in the line of duty or employment to the extent that medical attention is required, or that results in absence from duty or employment, will immediately seek medical attention and will notify his/her immediate supervisor, along with the agency physician. **The Under-sheriff's Office will be notified through the chain of command within twenty-four hours of the injury**.

B. **Injured employees will immediately**:

1. Request a supervisor to respond to the scene of the injury.

2. **Submit a Report of Employee Injury (MB #4) through their chain of command to the Major of Operations or respective bureau head for review and copying**. A copy should be sent to the Undersheriff's Office within twenty-four hours of the injury to afford the timely filing of Workers' Compensation reports to the county. This is particularly essential when an employee injury requires medical treatment. The applicable Bureau Chief will, after review and approval, send the entire report package to the Undersheriff's Office. A copy of the Report of Employee Injury (MB #4) will become part of an employee's medical file in the Undersheriff's Office.…

* * *

C. The immediate supervisor of the injured employee will:…

3. Submit a Report of Employee Injury (MB #4) if an employee is unable to complete the report due to the injury and/or hospitalization. Supervisors submitting such a report on behalf of the employee should note his/her initials next to the employee's printed name on the signature line.

County of Monroe, Office of the Sheriff, General Order No. 18-07 (Mar. 1, 2007) at 1–2, *attached to* Def.s' Mot. for Summary J., Apr. 4, 2012, ECF No. 25-14, Ex. K (emphasis added). The General Order further directs the employee's immediate supervisor to code the employee's time card "with a 'D' for any time lost following the actual day of injury, pending the approval of the use of 'Z' time through the Undersheriff's Office." *Id.* at 2.

It is undisputed that Sergeant Thomas Zembiec submitted an on duty Report of Employee Injury on an MB #4 form dated February 8, 2008. Sommers Decl. Ex. 1, Oct.

25, 2012, ECF No. 39-2. On the other hand, in a letter to Kleehammer dated August 26,

2008, Jennifer M. Sommers, Esq., counsel to the Sheriff, informed Kleehammer that

she was required by General Order 18-07 to complete an MB #4 form and send it back,

and that she had been so instructed by Lieutenant Spampinato on July 16, 2008. The

letter further advised Kleehammer that she had never complied with the order, and,

> Lt. Spampinato contacted you to ascertain whether you had received the form and General Order; you replied that you had received both but **were instructed by your attorney (Christina Agola, Esq.) not to complete and return the MB#4**. At that point Lt. Spampinato ordered to [sic] return the MB#4 form by August 14, 2008.

Letter from Jennifer M. Sommers, Esq., Sheriff's Counsel, to Stephanie Kleehammer, at

1–2, Aug. 26, 2008, *attached to* Def.s' Mot. for Summary J., Apr. 4, 2012, ECF No. 25-

5, Ex. B (emphasis added).

## RULE 11

The Honorable Nicholas G. Garaufis of the Eastern District of New York analyzed

the *sua sponte* imposition of sanctions by the Court under Rule 11 in his decision in *In*

*re Gushlak*, No. 11–MC–218 (NGG), 2012 WL 2564523 (E.D.N.Y. Jul. 2, 2012). As

Judge Garaufis explained:

> In relevant part, Rule 11(b) requires a lawyer to certify, "to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that his or her "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." If Rule 11(b) is violated, the court may impose sanctions, either upon a motion by the opposing party or on its own initiative. *See* Fed. R. Civ. P. 11(c). The conduct that constitutes a violation of Rule 11(b) differs, however, depending on whether the prospect of sanctions arises by motion or by an order to show cause. In *In re Pennie & Edmonds LLP*, the Second Circuit drew on language in the Advisory Committee notes to the 1993 amendment to Rule 11 to hold that where, as here, the court itself initiates an inquiry into a potential Rule 11 violation, sanctions should not be

imposed unless the responding attorney acted with "subjective bad faith." *See* 323 F.3d 86, 87 (2d Cir. 2003). This is in contrast to the *mens rea* standard that applies when a party makes a motion for Rule 11 sanctions. In those cases, the standard is objective unreasonableness. *Id.* at 90 (citing *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir.1997)). The rational for this distinction is that a motion for sanctions allows the responding attorney an opportunity to withdraw or disclaim his or her offending contention, whereas the court-initiated sanctions process does not. *Id.* at 91. This approach is not universally accepted, *see id.* at 93–102 (Underhill, J. dissenting); *Young v. City of Providence*, 404 F.3d 33, 40 (1st Cir. 2005), but it remains the law of the Circuit, *see ATSI Commc'ns, Inc. v. Sharr Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009).

* * *

Reference to recent district court cases similarly fails to provide clear guidance. Since the Circuit clarified the standard for court-initiated sanctions, district courts have found subjective bad faith in a variety of cases, ranging from those involving overtly dishonest or contemptuous behavior, *see, e.g., Gollomp v. Spitzer*, 06–CV–802 (FJS/RFT), 2007 WL 433361, at *---- – ----, 2007 U.S. Dist. LEXIS 8524, at *28–29 (N.D.N.Y. Feb. 5, 2007), *aff'd*, 568 F.3d 355 (2d Cir. 2009) (imposing sanctions on counsel under 28 U.S.C. § 1927 for lying to the magistrate judge about his disciplinary record); *SEC v. Smith*, 798 F. Supp. 2d 412, 426 (N.D.N.Y. 2011) (imposing sanctions on a party for intentionally misrepresenting her financial interest in a trust); *Washington 1993, Inc. v. Hudson* (*In re Hudson*), No. 00–11683, 2010 WL 3504767, at *---- – ----, Adversary No. 00–90091, 2010 Bankr. LEXIS 3003, at *16–17 (Bankr. N.D.N.Y. Aug. 30, 2010) (imposing sanctions on *pro se* litigant for filing recusal motion that included the baseless allegation that the bankruptcy judge committed a crime by altering the content of a submission), down to those where the court simply regarded an argument as frivolous, *see, e.g. McGuire v. Village of Tarrytown*, No. 08–CIV–2049 (KTD), 2011 WL 4347175, at *----, 2011 U.S. Dist. LEXIS 10321, at *4 (S.D.N.Y. Sept. 14, 2011).

The court concludes that the best interpretation of subjective bad faith must fall somewhere in between these two extremes. The standard can neither be so strict as to require a lie about a historical fact or contempt, nor can it be so lenient as to allow the court to impose sanctions for nothing more than a frivolous argument. If it were the former, then the court would be unable to impose sanctions for conduct prohibited by several important provisions of Rule 11, *cf.* Fed. R. Civ. P. 11(b)(2) (allowing for sanctions for "legal contentions" not warranted by law), which are expressly made grounds for court-imposed sanctions by subsection (c)(3) of that rule. If it were the latter, sanctions could be imposed for mere

negligence. Instead, the court concludes that, in the context of this case, a finding of subjective bad faith requires evidence of what might be referred to as "frivolous-plus." That is, it is not sufficient to find that a legal argument is frivolous. There must also be either direct or circumstantial evidence that counsel knew that the argument was without merit. One type of circumstantial evidence of such knowledge is evidence that the argument was made for an improper purpose. Subsection (b)(1) of Rule 11 provides examples of such improper purposes such as "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Where these motives are present, it is fair to conclude that counsel was aware that the frivolous argument was baseless, but raised it anyway because success on the merits was not the ultimate objective.

*In re Gushlak*, 2012 WL 2564523,1- 2.

## ANALYSIS

As indicated above, the Court waited over a month before rendering its decision on Defendants' summary judgment application to allow Ms. Agola the opportunity to correct, withdraw, or even explain, the challenged statements in her Supplemental Declaration, however, she failed to do so. Nevertheless, since the Court initiated this Rule 11 inquiry, the applicable standard which it must apply is subjective bad faith. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 87 (2d Cir. 2003) ("We conclude that where, as here, a *sua sponte* Rule 11 sanction denies a lawyer the opportunity to withdraw the challenged document pursuant to the 'safe harbor' provision of Rule 11(c)(1)(A), the appropriate standard is subjective bad faith."); *see also Castro v. Mitchell*, 727 F. Supp. 2d 302, 309–10 (S.D.N.Y. 2010) ("court cannot impose sanctions after a party is no longer able to withdraw or amend its challenged pleading unless the court makes a finding of subjective bad faith.").

At the outset, the Court must determine whether Ms. Agola's statements at issue in her Supplemental Declaration are false. Obviously, if the statements in her

Supplemental Declaration are true, Rule 11 sanctions, under the circumstances presented here, would not lie. In that regard, as indicated above, during oral argument, counsel for Ms. Agola maintained that that the Court could not find that any of Ms. Agola's statements were false based upon the County's interpretation of General Order 18-07 and in light of the decisions of Justices Vanstrydonck, Galloway and Rosenbaum. The Court is not persuaded by this argument.

In opposing summary judgment, Ms. Agola swore in her Supplemental Declaration that, "the Sheriff's Department has considered applications/requests for section 207-c benefits before without any form MB#4 being submitted." *Id.* ¶ 14. Moreover, she swore that, "I have personally represented Mr. Zembiec **in all related legal proceedings relative to his application for 207-c benefits** and am fully familiar with the pertinent facts and circumstances of the same." *Id.* ¶ 16 (emphasis added). She further swore that, "[p]rior to applying for section 207-c benefits, Mr. Zembiec (who had been out of work for months) did not complete a form MB #4." *Id.* ¶ 19. Additionally, she swore, "the fact remains: Mr. Zembiec was awarded section 207-c benefits, and he never submitted a form MB #4." *Id.* ¶ 30. Any reasonable person reading these sworn statements of Ms. Agola would conclude that the Monroe County Sheriff's Department awarded Sergeant Zembiec 207-c benefits for a work-related injury even though he "*never*"[8] filed an MB #4 form. That is certainly the way this Court read such statements, and prior to receiving Mr. Stark's Reply Declaration, along with the attached exhibits, the Court was ready to conclude that an issue of fact existed as to whether Ms.

---

[8] The Merriam-Webster online dictionary, http://merriam-webster.com (last visited Mar. 19, 2013), defines "never" as follows: "1 : not ever : at no time."

Sommers' statement, that Plaintiff was denied benefits because she failed to file an MB #4 form, was both false and pretextual.

An examination of the portions of the public docket in the *Zembiec* case[9] provided by the defense, establishes unequivocally that Sergeant Zembiec *did* submit an MB #4 form prior to applying for 207-c benefits. In fact, his MB #4 form was included in the record before Judge Larimer, and in the record on appeal. In both the district court and the Second Circuit, Ms. Agola was the attorney of record. In that regard, as indicated above, Ms. Agola swore, "I have personally represented Mr. Zembiec in all related legal proceedings relative to his application for 207-c benefits **and am fully familiar with the pertinent facts and circumstances of the same**." Agola Supp'l Decl. ¶ 16 (emphasis added). Subsequently, however, in her Amended Declaration, ECF No. 45, submitted in response to the Court's Order to respond to Mr. Stark's allegations, Ms. Agola for the first time explained in a sworn declaration that, "[t]his firm did not commence representation of Mr. Zembiec with regard to his benefits until approximately April 2009, more than one year **after he had submitted the February 8, 2008 MB#4 form**," and that, "Mr. Zembiec was represented by Glenn E. Pezzulo, Esq. in 2008." *Id.* ¶¶ 9 & 10 (emphasis added).

Clearly, since Ms. Agola averred that she was "fully familiar with the pertinent facts and circumstances," she must have been aware on October 19, 2012, at the time she swore that, "[p]rior to applying for section 207-c benefits Mr. Zembiec (who had been out of work for months) did not complete a form MB #4," *Id.* ¶ 19, and that, "he

---

[9] *Zembiec v. County of Monroe*, No. 09-CV-6075-DGL-MWP (W.D.N.Y. Feb. 20, 2009).

[Zembiec] never submitted a form MB #4," *Id.* ¶ 30**,** that he had in fact submitted an MB #4 form. In that regard, the public record before Judge Larimer in the *Zembiec* case contains a letter[10] from Glenn E. Pezzullo, Esq., to Undersheriff Gary D. Caiola, dated September 24, 2008, in which Mr. Pezzullo stated, *inter alia*, that, "[a]ttached hereto as **Exhibit A** is Thomas Zembiec's original MB 04-05 form, dated February 8, 2008." *Id.* Exhibit A is attached to Mr. Pezzullo's letter and is in fact Sergeant Zembiec's MB #4 form. Mr. Pezzullo's letter and the MB #4 form were filed in the public docket on January 19, 2010, well before Ms. Agola's October 19, 2012, Supplemental Declaration.

The complaint filed in the *Zembiec* case, which was signed by Ms. Agola on February 20, 2009, references Sergeant Zembiec's "original" MB #4 form, dated February 8, 2008, to which Mr. Pezzullo refers in his September 24, 2008, correspondence. More specifically, paragraph 21 of the *Zembiec* complaint states: "On February 8th, 2008, Plaintiff completes an Employee Injury Report alleging injury 'on duty.'" Subsequently, in paragraph 47, Ms. Agola writes: "On October 14th, 2008, Plaintiff requests that his leave be designated as 207-c time."[11] According to Ms. Agola, as detailed in the complaint in *Zembiec*, Sergeant Zembiec "complete[d] an Employee Injury Report," on February 8, 2008, that is, an MB #4 form. Thereafter, according to Ms. Agola as detailed in the *Zembiec* complaint, on October 14, 2008, Sergeant Zembiec "requeste[d] that his leave be designated as 207-c time," that is, he applied for

---

[10] Mr. Pezzullo's letter is included in Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend the Complaint, Jan. 19, 2010, ECF No. 26-4, submitted in the *Zembiec* case.
[11] In a Proposed First Amended Complaint in the *Zembiec* case, also signed by Ms. Agola, she makes the same statements in the same numbered paragraphs. *See* Proposed Amended Complaint ¶¶ 21 & 47, *Zembiec v. County of Monroe*, No. 09-CV-6075L (MWP), Dec. 2, 2009, ECF No. 21-4.

207-c benefits. Therefore, her statements in her Supplemental Declaration that, "[p]rior to applying for section 207-c benefits, Mr. Zembiec (who had been out of work for months) did not complete a form MB #4," and, "the fact remains: Mr. Zembiec was awarded section 207-c benefits, and he never submitted a form MB #4,"  Agola Supp'l Dec'l ¶¶ 19 & 30, Oct. 19, 2012, ECF No. 38, are not only at odds with the truth, they are contradicted by Ms. Agola's representations in the *Zembiec* complaint.

Accordingly, after due deliberation, the Court finds that the sworn allegations made by Christina A. Agola, Esq., in her Supplemental Declaration ¶¶ 19 & 30, filed on October 19, 2012, ECF No. 38, that, "[p]rior to applying for section 207-c benefits, Mr. Zembiec (who had been out of work for months) did not complete a form MB #4," and that "the fact remains: Mr. Zembiec was awarded section 207-c benefits, and he never submitted a form MB #4," are false. The Court also finds that these misrepresentations were made to counter Defendants' argument in support of summary judgment that the reason Plaintiff was denied 207-c benefits was not retaliatory, but because she failed to file an MB #4 form. The Court specifically determines that the representations concerning Sergeant Zembiec were made in subjective bad faith. That is, the Court finds that Ms. Agola knew the representations were false and she submitted them with a motive to mislead the Court, so as to gain an advantage in the litigation by avoiding summary judgment.

Support for the Court's determination that Ms. Agola acted in subjective bad faith is found in her apparent disregard of the requirements of the New York Rules of Professional Responsibility. Obviously, as an attorney admitted to practice in New York

State, Ms. Agola is bound by these rules when representing clients in federal court in the Western District of New York. W.D.N.Y. L.R. Civ. P. 83.3(a) ("Attorneys practicing in this Court shall faithfully adhere to the New York Rules of Professional Conduct."). In pertinent part, the Rules direct as follows:

RULE 3.1:

NON-MERITORIOUS CLAIMS AND CONTENTIONS

(a) A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.

(b) A lawyer's conduct is "frivolous" for purposes of this Rule if:…

(3) **the lawyer knowingly asserts material factual statements that are false**.

\* \* \*

RULE 3.3:

CONDUCT BEFORE A TRIBUNAL

(a) A lawyer shall not knowingly:

(1) **make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer**….

\* \* \*

RULE 4.1:

TRUTHFULNESS IN STATEMENTS TO OTHERS

In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person.

Comment

Misrepresentation

[1] A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. **Misrepresentations can also occur by partially true but misleading state-**

**ments or omissions that are the equivalent of affirmative false statements**….

New York Rules of Professional Conduct, Dec. 20, 2012, §§ 3.1, 3.3 & 4.1 (emphasis added); *see also* American Bar Ass'n Model Rules of Professional Conduct, Rules 3.1, 3.3 & 4.1 (2012). As indicated above, Ms. Agola's sworn factual statements in her supplemental declaration that: "[p]rior to applying for section 207-c benefits, Mr. Zembiec (who had been out of work for months) did not complete a form MB #4," and that, "the fact remains: Mr. Zembiec was awarded section 207-c benefits, and he never submitted a form MB #4," were patently false, belied by the record in *Zembiec*, with which she swore she was fully familiar, and obviously submitted to defeat summary judgment in the subject action.

## SANCTION

Having determined that Ms. Agola made statements in her Supplemental Declaration sanctionable pursuant to Rule 11, the question becomes what specific sanction should be imposed. In answering this question, the Court finds it necessary and helpful to consider Ms. Agola's conduct in context with her prior history.

On June 6, 2012, the Second Circuit issued a decision in *In re Agola*, No. 10-90061-am, 484 Fed. Appx. 594 (2d Cir. Jun. 6, 2012), in which it publically reprimanded Ms. Agola for misconduct described in a report of the Court's Committee on Admissions and Grievances. Appended to the Second Circuit's decision was the Committee report that outlined a review of 40 cases in which Ms. Agola defaulted by failing to file briefs or meet other deadlines, and noted that Ms. Agola's conduct had "been criticized by at least two judges sitting in the Western District of New York." In that regard, the Report

of the Second Circuit Committee on Admissions and Grievances further detailed the

following in a section entitled "Information Obtained from the District Courts":

> United States District Court Judge Charles J. Siragusa cited several cases
> in which Attorney Agola was counsel of record as illustrative of what he
> viewed as Attorney Agola's deficient performance. For example, in
> *Sullivan v. New York State Dep't of Corections*, Judge Siragusa dismissed
> a complaint filed by Attorney Agola and denied a motion to amend. The
> Court found that Attorney Agola failed to: "(1) 'proffer any explanation' for
> delaying her motion almost two years after the scheduling deadline had
> passed' (2) raise any causes of action over which the court had subject
> matter jurisdiction; or (3) 'supply any facts in support of [her Family
> Medical Leave Act and 42 U.S.C. § 1981 claims].'" Similarly, in *Emmerling
> v. Town of Richmond*, Judge Siragusa found that Attorney Agola (1) failed
> to cite the correct standard for a motion to dismiss; (2) failed to provide a
> short and plain statement under FRCP 8; and (3) implausibly argued that
> a repeated reference to an incorrect date was a typographical error. In
> *Kleehammer v. Monroe County*, Judge Siragusa found that Attorney Agola
> failed to cite the correct standard for a motion to dismiss and reminded
> Attorney Agola of the requirements of Rule 11 and questioned her "good
> faith basis for pleading the retaliation claim." In two other cases, Judge
> Siragusa precluded evidence as a sanction for Attorney Agola's failure to
> disclose evidence in a timely manner. Referral Order at 3. Perhaps most
> disturbing, in *Rojas v. Diocese of Rochester*, Judge Siragusa found that
> Attorney Agola submitted "sham evidence" in the hope of defeating
> summary judgment.
>
> The Committee also received a letter from Judge David Larimer through
> the Clerk of Court. Judge Larimer described eight cases in which he felt
> Attorney Agola's practice was deficient. Judge Larimer found that, "Ms.
> Agola on more than one occasion demonstrated a disregard for her
> obligations under Rule 11, with respect to both factual allegations and
> legal claims and theories that she has made before this Court." The court
> underscored what it termed Attorney Agola's "cavalier attitude" in alleging
> factual matters. Judge Larimer was also critical of Attorney Agola's "cut
> and paste" pleadings and motion practice, which resulted in statements in
> pleadings that were obviously not applicable to the case at issue. Judge
> Larimer specifically noted that he had brought his various observations
> about Attorney Agola's deficiencies to her attention in the past but the
> same deficiencies persisted.
>
> The Clerk of Court also forwarded a decision and order by Judge Michael
> Telesca in *Rice v. Wayne County*, 09 Civ. 6391 (July 26, 2010). In that
> case the court dismissed the complaint without prejudice for failure to

adequately allege a cause of action under the Family and Medical Leave Act and the New York Human Rights Law. When Attorney Agola filed an amended complaint it suffered from the same deficiencies as the original complaint. Judge Telesca made note of both "substantive and non-substantive errors" in the complaint. When Attorney Agola filed a motion pursuant to Rule 60(b), the court cautioned that "plaintiff's counsel is advised that in the future, such frivolous arguments may be subject to sanctions." The court stated: "I emphasize that the frivolous and legally unsubstantiated reasons upon which plaintiff's attorney Agola bases her motion for reconsideration exemplifies both a fundamental misunder-standing of the law and gross professional ineptitude in the representation of her client."

Report at 4. In addition, the Second Circuit's Referral Order, related that,

[i]n a fifth case, Judge Siragusa sanctioned Agola's law office $5,000 for pursuing a claim "that was clearly not warranted by the facts of th[e] case, or by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Geiger v. Town of Greece*, 2008 U.S. Dist. LEXIS 21190, 2008 WL 728471, *5 (W.D.N.Y. Mar. 18, 2008). In a sixth case, Judge Siragusa denied Agola's motion to amend because she had failed to demonstrate good cause for filing the motion eight months after the deadline to amend pleadings had passed. *See Glover v. Jones*, 2006 U.S. Dist. LEXIS 80667, 2006 WL 3207506, *4 (W.D.N.Y. 2006). *See also O'Reilly v. Marina Dodge, Inc.*, 2010 U.S. Dist. LEXIS 61521, 2010 WL 2553458, *9 (W.D.N.Y. June 22, 2010) (Siragusa, J.) (evidence precluded as sanction for failure to disclose earlier); *Schratz v. Potter*, 2008 U.S. Dist. LEXIS 102954, 2008 WL 5340992, *9 (W.D.N.Y. Dec. 19, 2008) (Siragusa, J.) (same)....

Referral Order at 7–8. The Referral Order also noted a case in which Judge Larimer

imposed a monetary sanction:

Judge Larimer dismissed the plaintiffs' complaint filed by Agola, for failure to sufficiently plead their claims, and denied Agola's motion to amend the complaint, finding that the proposed amendment was frivolous and brought in bad faith. *See Johnson v. University of Rochester Medical Center*, 686 F. Supp. 2d 259, 270-71 (W.D.N.Y. 2010) (noting that the publication of an allegedly defamatory document "had been procured and orchestrated entirely by [Agola]," a fact that was "glaringly omitted" from the proposed amended complaint). Agola was later sanctioned $8,399 for that conduct. *See Johnson v. University of Rochester Medical Center*, 715 F.Supp.2d 427, 430-31 (W.D.N.Y. June 3, 2010) (**"Given the bad faith**

> **inherent in counsel's attempt to place facts in a pleading which she knew firsthand to be misleading at best and utterly untrue at worst, and counsel's inexplicable refusal to withdraw the frivolous claims for nearly a year, even after their baselessness had been precisely identified and briefed by defendants, I find that an award of monetary sanctions is appropriate in this case."**). *See also Barkley v. Penn Yan School Dist.*, 2009 U.S. Dist. LEXIS 75310, 2009 WL 2762272, *1 n.1 (W.D.N.Y. Aug. 25, 2009) (Telesca, J.) (criticizing response to summary judgment motion).

Referral Order at 8–9 (emphasis added).

Following the Second Circuit's public reprimand in *In re Agola*, one might have expected that Ms. Agola would have taken great care to dot all her "i"s and cross all her "t"s, and to make sure that any papers pending were factually and legally accurate. Unfortunately, this has not occurred. Since *In re Agola*, this Court once again admonished the Agola law firm about using the correct standard of law in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), *Germano v. Webster Cent. Sch. Dist.*, No. 12-CV-6361-CJS, 2012 U.S. Dist. LEXIS 171976 (W.D.N.Y. Dec. 4, 2012). Moreover, in *Townsend v. New York State Dep't of Corr. & Cmty. Supervision*, No. 09-CV-6018-CJS-JWF, 2012 U.S. Dist. LEXIS 140745, 11-12 (W.D.N.Y. Sept. 28, 2012) the Court admonished Ms. Agola about misrepresenting the record:

> The Court again admonishes Ms. Agola, as it has in the past, about misrepresenting the record while opposing a summary judgment motion. *See, e.g., Colombo v. East Irondequoit Cent. Sch.*, No. 07-CV-6270 CJS, 2010 U.S. Dist. LEXIS 141961, 2010 WL 6004378 at *10 (Dec. 17, 2010) (reminding Ms. Agola of her obligations under FRCP 11(b) "with regard to factual representations made to the Court.").

*Townsend*, 2012 U.S. Dist. LEXIS 140745, 11–12 n.4. Further, in *Muhammad v. Wal-Mart Stores E., L.P.,* No. 10-CV-6074-CJS, 2012 U.S. Dist. LEXIS 169292 (W.D.N.Y. Nov. 28, 2012), the Court directed Ms. Agola to show cause why she should not be

sanctioned for misrepresenting that her client's complaint contained a gender

discrimination claim. In imposing a monetary sanction, the Court wrote:

> In deciding upon an appropriate sanction, the Court takes into account the fact that Ms. Agola does not appear to be the slightest bit contrite about her misrepresentations to the Court. To the contrary, Ms. Agola characterizes the Court's view on this point as "quixotic," and complains to Judge Arcara[12] that this Court is being unfair to her, while misstating the facts of this case to him. Ms. Agola's lack of candor or contrition is especially troubling given the number of times that this Court has admonished her over the years for committing similar infractions. As demonstrated over a period of years in numerous cases, Ms. Agola's approach to motion practice is to avoid dismissal at all costs, even if that means misrepresenting the facts or the law. Unfortunately, since Ms. Agola's cases very often lack the merit needed to legitimately survive a dispositive motion, situations such as this have become commonplace.
>
> Having considered all of the relevant factors under Rule 11 and 28 U.S.C. § 1927, the Court imposes the following sanctions on Ms. Agola. First, Ms. Agola is formally reprimanded for making a misrepresentation to the Court. In addition, Ms. Agola is required to pay a monetary sanction of seven thousand, five hundred dollars ($7,500.00) into Court. The Court imposes this sanction because lesser sanctions previously imposed have failed to deter this type of conduct.

*Muhammad*, 2012 U.S. Dist. LEXIS 169292, 35–36.

Finally, in *Rankin v. City of Niagara Falls*, No. 09-CV-974(A)(M), 2012 U.S. Dist.

LEXIS 126874 (Sep. 6, 2012), United States Magistrate Judge Jeremiah J. McCarthy

recommended[13] that Ms. Agola be suspended, writing:

---

[12] The Honorable Richard J. Arcara of this Court.

[13] Judge McCarthy's Report and Recommendation is currently on appeal to Judge Arcara. In that regard, this Court is aware that W.D.N.Y. L.R. Civ. P. 83.3(b) reads in part: "no censure, sanction, suspension, or disbarment shall be applied without notice and an opportunity to be heard and the approval of a majority of the District Judges of the Court in both active and senior service…." However, to the extent Local Rule 83.3(b) could be read to abrogate a district judge's right to impose, *sua sponte*, *any* sanction, including a monetary sanction, it would be contrary to Federal Rule of Civil Procedure 11, and thus not valid. *See* Fed. R. Civ. P. 83 advisory committee's note (1985) ("Rule 83, which has not been amended since the Federal Rules were promulgated in 1938, permits each district to adopt local rules not inconsistent with the Federal Rules by a majority of the judges."); *see also* W.D.N.Y. L.R. Civ. P. 1.1 (local rules meant to "supplement the Federal Rules of Civil Procedure….").

For the following reasons I find that Ms. Agola has repeatedly and deliberately violated Rule 11, and conclude that sanctions are warranted. I recognize that "sanctions should not be more severe than reasonably necessary to deter repetition of this conduct by the offending person or comparable conduct by similarly situated persons" (Rule 11 Advisory Committee Notes, 1993 Amendments). However, as Ms. Agola seems not to have learned from numerous past warnings and monetary sanctions, it appears that stronger measures are now called for.

In view of Ms. Agola's ongoing and blatant disregard of her Rule 11 obligations, I conclude that the least severe sanction "reasonably necessary" to address her misconduct is suspension from practice before this court for a period of six months. With some regret, but seeing no meaningful alternative under the circumstances, I recommend that this sanction be imposed.

*Rankin*, 2012 U.S. Dist. LEXIS 126874, *2–3. Judge McCarthy outlined some of Ms.

Agola's misconduct under the heading, "False/Misleading Submissions to the Court in

Seeking Extensions." There he detailed what occurred:

As Judge Larimer has recognized in sanctioning Ms. Agola in the past, "bad faith [is] inherent in counsel's attempt to [allege] facts … which she knew firsthand to be misleading at best and utterly untrue at worst". *Johnson ex rel. United States v. The University of Rochester Medical Center*, 715 F.Supp.2d 427, 430-31 (W.D.N.Y. 2010) (Larimer, J.), *aff'd*, 642 F.3d 121 (2d Cir. 2011). *See also Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 2006 U.S. Dist. LEXIS 9039, 2006 WL 435726, *6 (M.D.N.C. 2006) ("Intentional, or even reckless, misrepresentations to a court is bad faith behavior that the Court has a clear interest in deterring").

Ms. Agola now claims that her three consecutive requests for an adjournment of the deadline for responding to the summary judgment motion were "not intended as a 'pledge' that there was a basis for opposition, but, rather … that sufficient time was needed to review the substantive issues". Agola Declaration [90], ¶17. She claims that she was merely "seeking an extension of time to review the motion for summary judgment" and, if necessary, "withdraw as [plaintiff's] counsel". *Id.*, ¶37.

That is clearly not what she said at the time. Instead, on each occasion— December 5, 2011, January 4, 2012, and February 23, 2012—she sought an "adjournment … to file and serve the Plaintiff's opposition to defendant's Motion for Summary Judgment" (Agola Declarations [42-1], ¶10; [45-1], ¶11; [48-1], ¶18), and argued that "the Court should … allow Plaintiff to submit his opposition to Defendant's Motion for Summary

Judgment." Plaintiff's Memoranda of Law [42-2], p. 2; [45-2], p. 2; [48-2], pp. 2-3.

She justified those requests by swearing to me that "Plaintiff's opposition to defendant's Motion for Summary Judgment is substantive", and arguing that his "rights would be severely prejudiced" if his deadline for opposing the motion was not extended. Agola Declarations ([42-1], ¶¶7, 9; [45-1], ¶¶8, 10; [48-1], ¶¶15, 17).n6 The word "substantive" means "[h]aving a solid basis; not slight, weak, or transitory" (Oxford English Dictionary (Online Version 2012)), and is synonymous with "substantial". Roget's International Thesaurus §763.06 (6th Ed. 2001).

In her Objections to my June 13, 2012 Report and Recommendation, Ms. Agola admitted that she did not know whether plaintiff had a substantive basis for opposing the summary judgment motion when she sought the extensions, arguing that "it was reasonable … to request additional time to fully review the motion for summary judgment to make certain that the firm could … certify to the Court that there exists a material issue of fact for trial." Objections [83], p. 8. Since Ms. Agola did not know whether plaintiff had a substantive basis for opposing the motion, she defrauded the court by swearing that he did. *See DiRose v. PK Management Corp.*, 691 F.2d 628, 632 (2d Cir. 1982), *cert. denied*, 461 U.S. 915, 103 S. Ct. 1896, 77 L. Ed. 2d 285 (1983) ("a defendant may be guilty of fraudulent misrepresentation for making a false statement without knowing it to be false, if he made it recklessly with the pretense of knowledge that it was true when in fact he knew that he had no such knowledge"); *In re LILCO Securities Litigation*, 625 F. Supp. 1500, 1504 (E.D.N.Y. 1986) ("Fraud … means knowledge of the falsity of a representation or knowing that one does not have a basis for asserting the truth of a representation with the intention that another party rely on the representation").

Ms. Agola argues that she "did not mislead the Court in any material fashion, particularly … since [she] never advised the Court that she intended to put in an opposition to Defendant's motion for summary judgment". Agola Declaration [90], ¶35. In fact, that is exactly what she told me she intended to do—not just once, but on three separate occasions: "[i]n good faith, your Declarant anticipated filing and serving the Plaintiff's Opposition to Defendant's Motion for Summary Judgment on Monday, December 5, 2011" (Agola Declaration [42-1], ¶7); "[i]n good faith, your Declarant anticipated filing and serving the Plaintiff's Opposition to Defendant's Motion for Summary Judgment on January 4, 2012" (Agola Declaration [45-1], ¶8); "[i]n good faith, your Declarant anticipated filing and serving the Plaintiff's Opposition to Defendant's Motion for Summary Judgment by February 23, 2012" (Agola Declaration [48-1], ¶15).

By signing these declarations, Ms. Agola certified pursuant to Rule

11(b)(1) and (2) that, to the best of her knowledge, "formed after an inquiry reasonable under the circumstances", n7 her assertion (that plaintiff had a "substantive" basis for opposing the motion) was "not being presented … [to] cause unnecessary delay", and was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law".

Ms. Agola's suggestion that she "did not mislead the Court in any material fashion" (Agola Declaration [90], ¶35) is simply wrong. "[A] concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770, 108 S. Ct. 1537, 99 L. Ed. 2d 839 (1988). Ms. Agola's statements in seeking the extensions of her deadline for opposing the summary judgment were clearly "capable of influencing" my decision as to whether to grant those extensions. Since Rule 6(b) requires a party seeking an extension of a deadline to show "good cause" for the extension, she attempted to persuade me that plaintiff had a "substantive" (*i.e.*, solid or substantial) basis for opposing the summary judgment motion—for if he lacked such a basis, then there would be no reason to delay the inevitable dismissal of his claims by granting the extension. *See* 1 Moore's, §6.06[1][a] ("The court is expected to use its discretion to extend time periods in a manner that will 'secure the just, speedy, and inexpensive determination of every action and proceeding,' as stated by Rule 1. In order to secure the 'just, speedy, and inexpensive determination' of an action, a court might well deny a request for an extension of time").

Ms. Agola further argues that her "motions for an extension of time were fairly simple and unlikely to have caused any confusion or prejudice." Agola Declaration [90], ¶36. **Lying to a court can never be treated as a "fairly simple" matter. "Our entire justice system is premised on the dependability and truthfulness of documents which are signed by members of the bar."** *In re Baycol Products Litigation*, 2004 WL 1052968, *11 (D. Minn. 2004).

Therefore, "a district court may impose a punitive sanction for the filing of a paper that lacks factual foundation and is intended to mislead the Court and opposing parties, even if the paper does not significantly delay proceedings, because of the disrespect shown to judicial process." *Mercury Service, Inc. v. Allied Bank of Texas*, 117 F.R.D. 147, 156 (C.D. Cal. 1987), *aff'd*, 907 F.2d 154 (9th Cir. 1990).

*Rankin*, 2012 U.S. Dist. LEXIS 126874, 14–20 (footnotes omitted) (emphasis added).

Having considered Ms. Agola's history as detailed above, the Court now turns to

the purpose of Rule 11 sanctions. In that regard,

> [t]he central goal of Rule 11 sanctions is the deterrence of baseless filings and the curbing of abuses. *Cooter & Gell v. Hartmarx Corporation,* 496 U.S. 384, 393, 110 S. Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *Caisse Nationale De Credit Agricole–CNCA v. Valcorp,* 28 F.3d 259 (2d Cir.1994); *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 21 (2d Cir.1990) ( Rule 11 was enacted to "discourag[e] dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process.")….

*Kirschner v. Zoning Bd. of Appeals of Incorporated Village of Valley Stream*, 159 F.R.D.

391, 395 (E.D.N.Y. 1995). As to Rule 11, it is well settled that,

> the primary principle in imposing sanctions is that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons. *See Notes on Advisory Committee to Rule 11,* 1993 Amendments; *accord International Shipping v. Hydra Offshore, Inc.,* 875 F.2d 388, 392 (2d Cir.) (Rule 11 empowers a court with broad discretion to award that portion of an attorney's fee thought reasonable to serve the sanctioning purpose of the Rule), *cert. denied,* 493 U.S. 1003, 110 S. Ct. 563, 107 L.Ed.2d 558 (1989).

*Id.*

The Court, as indicated above, has previously imposed monetary sanctions on Ms. Agola of $5,000 for violating Rule 11 in *Geiger v. Town of Greece*, No. 07-CV-6066 CJS, 2008 U.S. Dist. LEXIS 21190 (W.D.N.Y. Mar. 18, 2008) and more recently, $7,500 for violating Rule 11 in *Muhammad*,  No. 10-CV-6074-CJS, 2012 U.S. Dist. LEXIS 169292 (W.D.N.Y. Nov. 28, 2012).[14] Further, Judge Larimer, as detailed above, imposed a sanction of $8,399 for Ms. Agola's misconduct in *Johnson v. University of Rochester Medical Center*, 715 F. Supp. 2d 427, 430–31 (W.D.N.Y. June 3, 2010).

---

[14]  Twenty-one days after the Court imposed the sanctions in *Muhammad*, Ms. Agola filed her response to the Court's directive that she address Mr. Stark's allegations in this case. Despite the Court's strong language in *Muhammad*, Ms. Agola, in responding to Mr. Stark's allegations, averred that: "Mr. Stark's allegations of 'lack of candor' on my part are wholly without basis in fact." Agola Amended Dec'l ¶ 4.

Consequently, the Court determines that a sanction "not more severe than reasonably necessary to deter repetition" with respect to the subject Rule 11 violation is $10,000.00. [15]

## CONCLUSION

Accordingly, Ms. Agola is hereby sanctioned pursuant to Federal Rule of Civil Procedure 11(c)(3) as follows: she is required to pay a monetary sanction of ten thousand dollars ($10,000.00) into Court within sixty days of the issuance of this Decision and Order.

IT IS SO ORDERED.

Dated:   March 20, 2013
         Rochester, New York

ENTER.    /s/ Charles J. Siragusa
          CHARLES J. SIRAGUSA
          United States District Judge

---

[15] The importance of sending yet another message of deterrence to Ms. Agola is underscored by the fact that, according to the Office of the Clerk of Court, as of March 18, 2012, Ms. Agola has 144 active cases in the Western District of New York. This constitutes six percent of the total civil cases.